**Theodore Roosevelt JOHNSON, Jr., Appellant,**

v.

**Donald WYRICK, Appellee.**

**No. 80–2136.**

United States Court of Appeals, Eighth Circuit.

Submitted May 21, 1981.

Decided July 20, 1981.

Rehearing and Rehearing En Banc Denied Aug. 14, 1981.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Alan C. Kimbrell, Rosecan & Kimbrell, St. Louis, Mo., for appellant.

Before GIBSON, Senior Circuit Judge, ARNOLD, Circuit Judge, and McMANUS, District Judge.[*]

FLOYD R. GIBSON, Senior Circuit Judge.

Theodore Roosevelt Johnson, Jr. appeals the denial of his petition for a writ of habeas corpus to release him from imprisonment in the state of Missouri. We affirm the district court's [1] denial of relief.

On February 1, 1973, Johnson was convicted by a jury of two counts of first degree murder, two counts of assault with intent to kill with malice, and two counts of first degree robbery by means of a dangerous and deadly weapon. He was sentenced to two concurrent life terms and to four concurrent terms of ninety-nine years, the latter to run consecutively to the life terms. His conviction was affirmed on direct appeal to the state appellate court in a twenty-one page published opinion. *State v. Johnson*, 539 S.W.2d 493 (Mo.App.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). Johnson's petition for state post-conviction relief under Missouri Supreme Court Rule 27.26 was dismissed without a hearing by the trial court. The

---

[*] The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[1] The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

dismissal was affirmed by the state appellate court. *Johnson v. State*, 574 S.W.2d 957 (Mo.App.1978). On December 18, 1979, Johnson filed a petition for habeas relief in the United States District Court, 501 F.Supp. 179, for the Eastern District of Missouri. The cause was referred to Magistrate Noce for review and recommendation. On September 29, 1980, Magistrate Noce filed a twenty-eight page written report recommending denial of the petition. On October 28, 1980, Chief Judge Wangelin, after reviewing the state court record and the magistrate's report, concluded that the habeas petition was without merit and denied the petition.

The state trial record convincingly demonstrates that shortly before 1:30 a. m. on March 18, 1972, Johnson and four other black males armed with various weapons, including sawed-off shotguns, entered and robbed a tavern and sixty of its customers in Maplewood, Missouri, a suburb of St. Louis. During the robbery, two patrons of the tavern were killed, one by a stab wound and the other, an off-duty police officer, by a shotgun blast into his head. In addition, a barmaid was stabbed and a patron was shot in the knee and hip.

Later that same morning (about 7:00 a. m.), based upon information given by a local resident, police officers spoke with Robert Toney on the porch of a house where he had been located. Toney granted the officers permission to enter the house. Upon entering, the officers noticed a shotgun butt on the floor of the bedroom which also contained two black males, including Johnson. Toney, Johnson, the other individual in the bedroom, and a male found in the bathroom were all arrested around 7:30 or 8:00 that morning. The house was then searched. Among other weapons, the officers found the murdered policeman's gun and holster. A bag full of loot taken in the robbery, including wallets, purses, and credit cards, was also seized. Johnson's fingerprint was found on a check-cashing card belonging to one of the victims and on an unidentified wallet.

Finally, Johnson was identified at trial by two barmaids who testified at trial that Johnson had come into the bar late Friday afternoon, March 17, St. Patrick's Day, to purchase popcorn or potato chips. Johnson was also identified by one of these barmaids as having stood across from her, holding a shotgun during the robbery. Two patrons also identified Johnson as one of the robbers.

In his appeal from the district court's denial of habeas relief, Johnson alleges (1) that the in-court identifications were tainted and unreliable; (2) that his right to due process was violated when the trial court refused to order disclosure of the identities of a confidential informant and the police officer who spoke with a confidential informant; (3) that the state trial court erred in the manner in which it obtained information concerning the potential need for security at trial; (4) that his right to due process was violated when the trial court refused to order a continuance in the case and later refused to order a two-day recess; and (5) that his right to due process was violated by the state's refusal to disclose certain material purportedly in its possession. We find these allegations to be without merit and affirm the district court's denial of habeas relief.

Before we address the merits of Johnson's appeal, we note the limited review power of the federal courts in habeas proceedings over state court factual findings. As recently stated by the Supreme Court in *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722, 733 (1981) (footnote omitted):

> Congress in § 2254(d) intended not only to minimize that inevitable friction [between state and federal courts] but to establish that the findings made by the state court system 'shall be presumed to be correct' unless one of seven conditions specifically set forth in § 2254(d) was found to exist by the federal habeas court. If none of those seven conditions were found to exist, or unless the *habeas* court concludes that the relevant state determination is not 'fairly supported by

the record,' 'the burden shall rest upon the applicant to establish *by convincing evidence* that the factual determination by the State court was erroneous.' (Emphasis supplied.)

This presumption of correctness applies to factual determinations made both by the state trial court and by the state appellate court after having reviewed the trial court record. *Id.,* 449 U.S. at 547, 101 S.Ct. at 769, 66 L.Ed.2d at 730.

*In-court identification*

On appeal, Johnson contends that the in-court identifications of him by the barmaid and the two patrons were based upon a pretrial identification procedure that was so unduly suggestive and unreliable as to deny him due process of law. Specifically, Johnson contends that the use of a photographic display, in which the five robbers' single photos were mounted on a cardboard poster and shown to the witnesses in preparation for trial, rendered unreliable the in-court identifications. In the district court and in the state appellate court, Johnson also argued that the original lineups, and a photograph and videotape of the lineups, shown shortly after the robbery, were also unduly suggestive. The state trial court on page 46 of the trial transcript, as well as the state appellate court, 539 S.W.2d at 519, and the federal magistrate on page 13 of his report, found the lineups to be proper and non-suggestive. We agree. Apparently Johnson does not appeal this factual finding, but contends only that the subsequent cardboard photographic display containing his picture, which the prosecutor used in preparation for trial, rendered the in-court identifications inadmissible. We disagree.

The state appellate court addressed this issue in its dismissal of Johnson's direct appeal. The court concluded:

Although defendant attacks on various grounds every single viewing of himself or his likeness by all witnesses who testified, a substantial portion of his attack is directed at testimony as to occasions during preparation for trial at which witnesses were shown photographs of defendants by the prosecuting attorney. If initial identification procedures were not improper or impermissibly suggestive, they were not violative of defendant's constitutional rights. In addition, if subsequent in-court identifications of appellant are found to have a basis independent of any improper procedure, such identifications are admissible despite potentially suggestive pre-trial identification procedures. *State v. Ross,* 502 S.W.2d 241, 246[2] (Mo.1973); *State v. Taylor,* 496 S.W.2d 822, 824[3, 4] (Mo. 1973). Because it was not error to admit identification testimony on the above stated basis, it is unnecessary to review here each step in the prosecuting attorney's preparation of this case subsequent to initial identifications of defendant by these witnesses. Not finding any evidence that would have required suppression of the witnesses' identification testimony, the point is ruled against defendant.

*State v. Johnson,* 539 S.W.2d at 519. The state appellate court, therefore, made a factual finding that the witnesses' in-court identifications were independent of any improper procedure. Also, the initial lineups were conducted prior to the complained-of identification procedures.

■ While we agree that the use of the cardboard photo displays was somewhat suggestive,[2] "the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' *Simmons v. United States,* 390 U.S., [377] at 384 [88 S.Ct. 967, 971, 19 L.Ed.2d 1247]." *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). The question becomes whether the in-court identification was reliable under the "totality of the circumstances" even though one aspect of the confrontation pro-

---

**2.** We note that the poster contained photos of all five robbers. The witnesses each identified only two of the photos. The five-photo display was therefore much less suggestive than a single-photo display. Probably no witness could have seen all the robbers so as to identify all of them. Thus the witnesses were careful and selective in their identifications, identifying only those robbers they had an opportunity to observe during the course of the robbery.

cedure was perhaps somewhat suggestive. As stated in *Neil v. Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382–83, and in *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the court must consider the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the amount of time between the crime and the confrontation.

In this case we deal with the narrow question of the effect which the cardboard photo display had on the in-court identifications. The cardboard display was used at a mock-up of the robbery, held about two months after the event and after positive identifications, which occurred shortly after the crime was perpetrated, had already been made. This case does not involve a question of an attempt by the prosecutor to introduce the out-of-court cardboard photo display identification of Johnson as direct evidence.

Returning to the *Neil v. Biggers* factors, we find that the three witnesses testified that they identified Johnson during the robbery. Additionally, two of the three witnesses, the barmaid and a female patron, testified at trial that they positively identified Johnson as one of the robbers at the non-suggestive lineups held shortly after the robbery.[3] The third witness testified that he identified Johnson in a photograph and video tape shown to him while he was hospitalized from injuries received during the robbery. The barmaid testified that during the robbery Johnson stood almost directly in front of her under a bar light for almost three minutes. In addition, she testified that Johnson had previously entered the bar that afternoon to buy popcorn or potato chips. The female patron testified that she viewed Johnson as he walked past her table. Johnson was a black male and carried a shotgun during the robbery. Both of these factors were unusual at the tavern and caused the two witnesses to focus their attention on Johnson's presence. These witnesses had also identified Johnson at the lineup prior to being shown the somewhat suggestive cardboard photo display.[4] Under the "totality of the circumstances," the identifications of Johnson were reliable. In retrospect, it would have been better had the witnesses not been shown the cardboard photo display prior to trial. "However, the defect, if there be one, is not of constitutional dimension." *Bivens v. Wyrick*, 640 F.2d 179, 181 (8th Cir. 1981). We therefore agree with the state appellate court's finding that "it was not error to admit identification testimony" based on the original lineups. *State v. Johnson*, 539 S.W.2d at 519.

*Informant identity*

Johnson next contends that the state trial court violated his right to due process in refusing to order disclosure of the identity of a confidential informant and that of the police officer who spoke with a confidential informant. The confidential informant supplied information to a police officer to the effect that a blue Chevrolet may have been used in the robbery. The trial court refused to order disclosure of the informant's identity. A confidential informant[5] also supplied information concerning Robert Alfred, who was arrested when he arrived at the house where Johnson was found in the bedroom. The charges against Alfred were later dropped. The state trial court refused to order the identification of the police officer who obtained the information from the informant.

---

**3.** Johnson argues that the barmaid's identification of him at the initial lineup is questionable. At trial, the barmaid testified that she identified Johnson at the time of the lineup. Johnson produced rebuttal witnesses that implied the barmaid did not identify Johnson. This issue, however, goes to the credibility of the barmaid and not to the constitutionality of the lineup procedure itself.

**4.** *See* note 3, *supra*.

**5.** It is possible that this informant was the same individual who supplied information concerning the blue Chevrolet.

The state appellate court reviewed the trial judge's actions and the circumstances surrounding the informant's activities. The appellate court made the following factual findings:

The officer testified that the informant was not a witness. There is no evidence that he was a participant. Neither of the alleged informant's tips, that regarding the blue Chevrolet and that leading to Alfred's arrest, were demonstrated to have led to defendant's arrest or conviction nor was it shown that any evidence discovered as a result of the alleged tips was used against this defendant at his trial. The police were unable to establish what car, if any, was used, and Alfred was released for lack of evidence.

\* \* \* \* \* \*

Taking into consideration the facts and circumstances of this case and the flexible standards set forth in *Roviaro*, we do not believe that it was error to deny the request for disclosure. There is no indication here, as there has been in the cases in which the court compelled disclosure or dismissal, that the informant took part in the event or was even present.

*State v. Johnson*, 539 S.W.2d at 509–10.

These findings are entitled to a presumption of correctness. *See Sumner v. Mata*, —— U.S. at ——, 101 S.Ct. at 771, 66 L.Ed.2d at 733; *ante* at 1236. This court has recently restated the relevant criteria for disclosure under *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957). In *United States v. Skramstad*, 649 F.2d 1259, 1265 (8th Cir. 1981), Judge McMillian stated:

Nor do we think that disclosure of the identity of the informant as a material defense witness was necessary under *Roviaro v. United States*, 353 U.S. 53, 60–61 [77 S.Ct. 623, 627–28, 1 L.Ed.2d 639] (1957). The informant in the present case was a mere 'tipster.' The informant simply provided the police with information and did not witness or participate in any drug transaction. *See United States v. House, supra*, 604 F.2d [1135] at 1140. 'In cases involving the "tipster" type of

informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that disclosure is not material and therefore not required.' *United States v. Barnes*, 486 F.2d 776, 778 n.3 (8th Cir. 1973) (citations omitted).

In this case, also, the informant was a mere "tipster." Furthermore, the relevance of the tip itself is questionable in light of the fact that the car and Alfred were never directly linked to the robbery. We agree with the state appellate court's finding that there is no indication "that the informant took part in the event or was even present." *State v. Johnson*, 539 S.W.2d at 510.

We are concerned, however, with the trial court's refusal to order disclosure of the identity of the police officer who received the tip. Ordinarily the identity of the police officer should be disclosed, so long as he himself is not acting in an undercover capacity, in situations where disclosure might jeopardize his safety. We have reviewed the trial court transcript; it reveals that the following exchange occurred:

MR. KIMBRELL: Your Honor, at this time I will ask this [the police officer's identity] be disclosed as to defendant, as to information being favorable to defendant on the order of Judge Ferriss.

THE COURT: The request is denied. Mr. Kimbrell, if I understand it, this information involves the question of Alfred being involved?

MR. KIMBRELL: Beg your pardon?

THE COURT: The request is denied.

It is apparent to us that the trial court denied Johnson's request for the identity of the police officer, not on grounds of privilege, but rather on the grounds of relevancy, namely, that Alfred's possible involvement in the robbery had not been demonstrated to the extent necessary to justify this collateral inquiry. We agree, and find that the trial court did not commit any constitutional error in this regard.

*Trial security*

Johnson next alleges that the state trial court erred in the manner in which it

obtained information concerning the potential need for security at trial.[6] Johnson does not allege that the trial judge was biased against him in any manner as a result of information he received. Appellant's brief at 25 n.8. Nor does Johnson vigorously complain that the security measures were unjustified, although he does state that he may have been prejudiced by the security arrangements.

On direct appeal, the state appellate court held that the presence of four uniformed policemen outside the courtroom and two plain-clothes security officers inside the courtroom was "not unreasonable in light of the circumstances." *State v. Johnson*, 539 S.W.2d at 514. The federal magistrate in his report and recommendation came to the same conclusion. We also agree. The state trial judge had a duty to see to it that proper security was provided to protect the defendant, the witnesses, and all others properly attending or participating in the trial. He performed that duty well within the bounds of discretion. We find that no prejudice resulted from the security measures imposed by the state trial court. We hold, therefore, that if the state trial court may have erred in the manner in which it received information concerning the necessity for security, the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

*Continuances*

█ Johnson contends that the state trial court violated his right to due process when it refused to delay the start of his trial until Nathaniel Heard, a potential state's witness in another defendant's case, could be found. In addition, Johnson argues that the trial court erred in refusing to grant a two-day continuance during trial so that his expert

on whether he had fired a gun at the time of the robbery could be more readily available. The state appellate court, on direct appeal, rejected both of these arguments. *State v. Johnson*, 539 S.W.2d at 505–06.

Johnson argues here, as he did before the state appellate court, that Heard's testimony was relevant to the extent that it may have supported his defense theory. According to Johnson, Heard presumably would testify to the effect that only four robbers were present.[7] The state appellate court found that "[t]he prosecution's evidence established that five persons participated in the offense. Proving that Davis, Hill, Toney and Jones were there would not establish that Johnson was not." *Id.*, 539 S.W.2d at 506. We agree. Johnson's trial had already been postponed three times—twice at Johnson's request. The state trial court committed no error in refusing a third request, made less than one week before the scheduled start of the trial.

Johnson also contends that the state trial court erred in refusing to grant a two-day continuance near the end of the trial so that his expert, on whether Johnson had fired a gun, could fly in from California to rebut the testimony of the state's expert. Johnson's expert, according to the offer of proof, would testify that the amount of chemicals found on Johnson's hands was consistent with his occupation as a mechanic. At trial, Johnson used a letter written by his expert in an attempt to impeach the state's expert.

In the trial of this case, which lasted over a week, the jury was sequestered. At the time Johnson made his motion for a continuance, the record does not reveal why his expert would not be available until two days later. This court cannot imagine many circumstances that would be more

---

6. In his brief, Johnson alleges that the state trial court held a secret, *ex parte* pretrial conference with law enforcement officers, wherein allegations were made that he was a "militant" and a tape recording was played wherein his voice exhorted listeners to racial violence. Johnson, however, has not presented any evidence to support these allegations.

7. Johnson also contends that Heard would testify that one of the robbers, Hill, fired the gun that killed the police officer. While it is not asserted that Heard was a witness to the crime, he reportedly claimed to overhear a statement made by Hill, who allegedly bragged about killing the police officer. At any rate, this assertion, even if true, would not affect Johnson's guilt under Missouri's felony murder law. *See post* at 1240–1241.

pressing than a murder trial involving a sequestered jury. In this age of jet travel, Johnson's expert should have been available to testify on less than a day's notice, barring a personal tragedy.

In any event, Johnson was able to partially rebut the testimony of the state's expert through cross-examination. In addition, as noted by the state appellate court and the federal magistrate, under Missouri's felony murder law, Mo.Rev.Stat. § 556.170 (1939) (current version at Mo.Ann.Stat. § 562.041 (West 1979)), it was not necessary for Johnson to have handled or fired a gun in order for him to be found guilty. *Id.*, 539 S.W.2d at 506. The trial court did not err in denying the continuances. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

*Pretrial disclosure*

■ Johnson's final contention on appeal is that his right to due process was violated by the state's refusal to disclose certain material purportedly in its possession. The federal magistrate's report dealt with this issue in the following manner:

> Petitioner is in essence arguing that the prosecution was required to disclose completely and in detail all the police investigatory work on the case. The Constitution does not require this. *Moore v. Illinois*, 408 U.S. 786, 794–95 [92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706] (1972). All that the Constitution requires is that the prosecution upon defense request disclose evidence which would be material either to the guilt or punishment of the defendant. *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963). The court in this case ordered the prosecution to disclose all evidence which might reasonably be considered favorable to the defendant * * * and accepted the prosecution's representation that it had complied with the order. * * * Petitioner does not allege how the evidence which was not disclosed would be material to either his guilt or punishment, * * *.

On these grounds, the magistrate then found Johnson's argument to be without merit. We agree, and affirm on this issue on the basis of the magistrate's report.

In conclusion we note that Johnson has not challenged his conviction on the grounds of insufficient evidence, either before this court or on direct appeal to the state appellate court. *See State v. Johnson*, 539 S.W.2d at 500. The evidence adduced at trial demonstrated beyond a reasonable doubt that Johnson was guilty. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979). On the day of the robbery, Johnson entered the tavern and cased it, using the pretext of purchasing popcorn or potato chips. Later that evening he entered the tavern and held a shotgun on the employees and patrons while the robbery was in progress. The next day he was found in the house that contained the loot and the murdered policeman's gun. Johnson's fingerprints were found on some of the loot. In short, Johnson was a participant in a vicious crime that resulted in two deaths. He must now continue serving the sentence of imprisonment that both society and justice demand be carried out.

Affirmed.