McCoy **GILMORE**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

*No. 16996.*

United States Court of Appeals
Fifth Circuit.

June 23, 1958.

William F. Walsh, Houston, Tex., Percy Foreman, Houston, Tex., counsel for appellant.

Donald F. McNiel, II, Asst. U. S. Atty., William B. Butler, U. S. Atty., Gordon J. Kroll, Asst. U. S. Atty., Houston, Tex., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal from a conviction and subsequent sentence as a Boggs Act, 26 U.S.C.A. § 2557(b), multiple offender for unlawful sale of narcotics, 21 U.S.C.A. § 174, presents as the only substantial question the refusal of the Trial Court to require a Narcotics Agent to disclose the name of a non-paid informer, more euphemistically referred to as a "special employee."

The case was made by the prosecution entirely on the testimony of Agent Morris who made the alleged purchase. Defendant offered no testimony at all. There was ample evidence to sustain the jury verdict of guilty and to warrant the inferences discussed in our brief outline of the facts.

On the oral version recited by Agent Morris, the function of the undisclosed informer, whose governmentally-protected anonymity makes it convenient for us to refer to him as "Anonymous," may appear to have been superficial. In brief, the story was that Morris entered Turner's Tavern, a bar-like establishment in Houston, Texas, operated by Appellant Gilmore, and took a seat at a table. Anonymous, who was already in the Tavern at the bar, came over to the table, spoke a few words to Morris, walked away and returned to the bar. Defendant then approached the table and said to Morris that he had "heard all about you" and understood, from Anonymous, that Morris was a seaman. Whereupon Morris inquired if defendant could "do me any good" to which he replied, "Yes, I think I can."

Defendant, followed by Morris, then walked toward the rear door. The two talked there, during which conversation the deal was made for Morris to get a small number of caps immediately with a larger "buy" to be effected as soon as defendant contacted another. During part of this time, Anonymous was present. Morris then gave defendant $20.00 of marked official funds. Defendant left by the rear door and a few moments later returned through the front door and told Morris to "Look in the front seat of your car." Morris went there immediately and found four capsules containing the subsequently identified heroin.

But cross examination and the production pursuant to demand under 18 U.S.C.A. § 3500 of two written investigative report statements made by Morris and which were tendered, without objection, in complete form save for excision of Anonymous' name wherever it appeared in the text, revealed that Anonymous' function was not so limited. Anonymous had considerable to do in this claimed sale and purchase. First, it was he who set the stage. It was Anonymous who told defendant about Morris. Anonymous had described Morris as a seaman friend who was interested in obtaining some narcotics. Anonymous was already in the tavern when Morris arrived. When he arrived, Anonymous told Morris what he had said to the defendant. Shortly, defendant appeared and had the conversation previously described in which, of course, defendant treated with him as a seaman since he had, presumably from Anonymous, "heard all about you." Then, when Morris and defendant went toward the rear door, Anonymous joined the two of them. While Morris testified that all Anonymous did was to ask one of them for a cigarette, after which Anonymous then went to a phone booth, he had to acknowledge that Anonymous was present during part of that conversation and was in a position to have heard what was said. Whether he had heard, and had he, what part of it Anonymous had actually heard, Morris was, of course, unable to say.

▇ Objection to revealing Anonymous' identity was solely on the ground of the so-called informer's privilege. We think, however, that under Portomene v. United States, 5 Cir., 221 F.2d 582; United States v. Conforti, 7 Cir., 200 F.2d 365; Sorrentino v. United States, 9 Cir., 163 F.2d 627, the correctness of which had precipitated the grant of certiorari with resulting approval of them in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, this testimony should have been permitted. It meets the more definitive declaration of Roviaro that " * * * whenever the informer's testimony may be relevant and helpful to the accused's defense," identity must be disclosed. At the same time, its application here comes within the spirit of the rule broadly laid down. "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other

relevant factors." Roviaro v. United States, 353 U.S. 53, 61, 77 S.Ct. 623, at page 628, 1 L.Ed.2d 639, at page 645.

Here Anonymous had done more than merely inform or supply information. He was an active participant in setting the stage, in creating the atmosphere of confidence beforehand and in continuing it by his close presence during the moments of critical conversation. Moreover, in Morris's own version, defendant was tied into the narcotics shortly found on the front seat of his automobile only by the circumstance of the conversation in which Morris sought to buy and defendant agreed to sell a few caps. This made that conversation of critical importance. If what Morris said was said was said, it authorized the inference of possession which set in motion the whole train of statutory presumptions. 21 U.S. C.A. § 174. If no such conversation took place, or if it was substantially different, the inferences warranted might likewise be different, whether for jury resolution as a "fact" question or by the Court as one of law.

Here was a person affirmatively shown to have been within hearing distance who was an actual witness to the crucial part of this transaction. The conversation, both what was said, how it was said, and what was not said, presented matters of great materiality. It was of immediate relevancy. Not only did it bear on what sort of trade had been made, if indeed one had been made, but it bore directly on the other circumstances giving rise to the transaction and its consummation by the "finding" of the capsules in the Agent's car. These matters would include the motive and interest of Anonymous. Since his identity was protected and cross examination of Morris on these matters produced only a negative "I don't know" response, defendant was denied the opportunity of determining the interest and motives of Anonymous. The jury might well have considered it important in passing on credibility to know whether charges (indictment, information or bureau complaint) were or were not then pending against Anonymous, whether immunity or preference had been promised him if he undertook to work up or work on other cases, whether he was an addict, whether he had previously known defendant or had dealings with him that might have given rise to the hope of vengeance, and the like.

As Anonymous was a principal actor before and during this performance, who he was and what he knew was certainly material and relevant. In this testimony there might have been the seeds of innocence, of substantial doubt, or overwhelming corroboration. As the inferences from it covered the full spectrum from innocence to guilt, the process of truth-finding, which should be the aim of every trial, compelled its disclosure.

Since excising Anonymous' name from the investigative statement reports tendered under 18 U.S.C.A. § 3500 was merely a subsidiary ruling consistent with the primary ruling that no disclosure, orally or in writing, would be permitted, we need not discuss this phase separately. On a retrial the name must be given and since the statements were otherwise complete and tendered into evidence without limitation, to include the informer's name will now be a matter of course.

This leaves only the point that the Court erred in sustaining the Government's motion to quash the subpoena duces tecum issued on the eve of trial and returnable at its commencement. By its terms the local Narcotic Agent in Charge (not Morris) was ordered to produce " * * * all currently effective regulations, orders, bulletins, field manuals, policy letters or other matter of a directive nature promulgated by your superiors in the Federal Bureau of Narcotics, however styled or described within that Bureau, which are in your possession or subject to your control."

There was certainly no abuse of the Court's discretion shown here. To the Trial Judge's statement that "The defendant is not entitled to inquire into the inner workings of the office of the Bureau of Narcotics," the defendant's brief

makes the retort: "Why not? This appellant asks." Our answer is that subpoena duces tecum is not a discovery weapon as such, although it may perhaps at times be in aid of discovery made under Rule 16. Cf. United States v. Bennethum, D.C.Del., 21 F.R.D. 227. Rule 17(c), Federal Rules of Criminal Procedure, 18 U.S.C.A., relates only to the production of documentary evidence and objects. The Rule contemplates, in its broader sense, " * * * any document or other materials, admissible as evidence, * * *," Bowman Dairy Co. v. United States, 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879, 885.

Neither here nor in the companion case where it was more fully developed (and incorporated in the trial proceedings and record by consent of the Court and all counsel) was any showing made that these internal matters would be relevant or material to the issue of the guilt or innocence of defendant. As close as defendant came was to suggest that if an informer's testimony were used, the policy directives, etc., would show the basis on which they were hired and paid. But the Court announced categorically that if such testimony were offered, he would allow full cross examination on such circumstances. Of course no informer was presented. Indeed, although erroneously so, the Informer was kept almost completely out of the case. Actually, however, the argument before the Trial Court revealed that the subpoena was to have had no such limited function and its issuance was out of a hope that something helpful might turn up. Rule 17(c) is not available for such purpose.

Reversed and remanded.

CAMERON, Circuit Judge (dissenting).

I agree with the portion of the majority opinion which holds that the court

below did not abuse its discretion in denying appellant's motion for subpoena duces tecum. But I cannot subscribe to its action in reversing this conviction on the ground that the trial court committed reversible error in approving the excision from Agent Morris' statements of the informer's name. The statements were voluntarily produced by the Government pursuant to the Act of Congress of September 2, 1958, 18 U.S.C.A. § 3500, which empowers the court to order the United States "to produce any statement * * of the witness in the possession of the United States *which relates to the subject matter as to which the witness has testified."* (Emphasis added.) This statute is in derogation of common law [1] and is in the nature of a supplement to the procedures provided by Rule 16, Federal Rules of Criminal Procedure, by which defendants in criminal cases are permitted limited exploration into the Government's investigation files.

It would probably be conceded that, in cases such as that before us, the burden rests upon a defendant attempting to put the trial court in error, to show (1) that the excised matter was relevant to the subject matter of the witness' testimony, (2) that it related to a material matter, (3) that the substantial rights of the defendant were prejudiced by the excision,[2] and (4) that, since decision of the question raised by defendant was committed to the court's sound discretion, the court below had abused its discretion. In my opinion, this defendant did not make any proof sustaining those propositions, or any of them, and the majority has substituted speculation for proof in its effort to supply the deficiency.

(1) The "subject matter as to which the witness ha[d] testified" when Agent Morris' statements were produced was

---

1. The Advisory Committee note to Rule 16 cites a Second Circuit case, United States v. Rosenfeld, 57 F.2d 74 stating: "Whether under existing law discovery may be permitted in criminal cases is doubtful." And cf. Indiviglio v. United States, 5 Cir., 1957, 249 F.2d 549, 553 et seq., and the authorities cited.

2. Rule 16 of the Criminal Rules uses the words "material" and "reasonable," Rule 34 of the Civil Rules, 28 U.S.C.A. its civil counterpart, uses the phrase "showing good cause therefor," and Rule 52(a) of the Criminal Rules provides that any error shall be disregarded which "does not affect substantial rights."

the purchase [3] by the agent from defendant of four capsules of heroin. He testified that defendant came from behind a bar he was operating and approached him at a table where the agent was sitting. In a conversation beginning there and continuing as the two walked towards the back door of the bar, the agent arranged that defendant deliver him four capsules which turned out to be heroin. Defendant placed them on the front seat of the agent's car and came back into the bar and so advised the agent.

The conversation was had entirely between defendant and the agent, no mention was made of the informer or of the fact that there was an informer, and the entire transaction of purchase and sale, consummated between the two alone, was the subject matter of Agent Morris' direct examination. He was the only witness who testified for the Government except the chemist who analyzed the subject of the purchase.

The informer was introduced into the case by the attorney for the defendant. It was after Agent Morris' statements were delivered to defendant's attorney that he brought up, for the first time, that there was a special employee of the Bureau of Narcotics present in the bar. Defendant's attorney was careful not to bring out before the jury any connection this special employee may have had with the transaction between defendant and the agent. His connection with the case, so much emphasized in the majority opinion, appears only from the two reports of Agent Morris which were never introduced in evidence, as to which the jury had no information whatever.[4] It is clear, therefore, that the name of the informer, whose activities were never placed before the jury, was not relevant to the testimony given by the witness upon which defendant was convicted.

The sole contention made by defendant in his colloquies with the court, aimed at forcing the Government to supply the excised name of the informer, was that the informer, being one of four persons present in the bar, may have heard part of the conversation between defendant and the agent. Defendant argues, of course, that he might have elicited from the informer as a witness testimony as to what was said between the defendant and the agent during that part of the conversation. That is the sole purpose, revealed by the record, which the defendant desired to serve by having the name supplied to him.

Without any proof at all that the defendant could have obtained favorable testimony form this source, the majority is content to reverse the case because he "might" have been helped by the informer as a witness. Such a surmise has, in my opinion, no basis whatever. If we follow the lead of the majority and explore the terms of the two statements of Agent Morris, we learn that the informer had told defendant that the agent was coming in presently to purchase some heroin, that the agent was his friend and was a seaman and would probably be interested in buying heroin in considerable quantities; and that the way for defendant to approach the agent had been arranged by the informer. It certainly is not reasonable that one so oblivious of the interests of defendant would turn around and give favorable testimony in his behalf.

(2) The record reveals clearly that the transaction forming the basis of defendant's conviction was consummated while the two were at the table and when admittedly the informer was not in hearing distance. There, the defendant agreed to deliver four capsules and the money was paid. The conversation as the two walked to the rear of the bar related to

---

3. The indictment charged that defendant "did unlawfully, fraudulently and knowingly sell to Leon Morris approximately six grains of heroin hydrochloride."

4. The two reports were merely tendered and delivered to defendant's counsel and he was given an opportunity to study them. The reports appear in the record, but it is clear that they were never offered in evidence or seen by the jury.

subsequent purchases which the agent hoped to make, but which he did not make.

From the argument of the defendant, which has apparently found hospitable lodgment in the majority's thinking, it was to be expected that the defendant would have a Roman holiday bandying about before the jury, the informer and his activities, with the result which normally follows such a course, that the minds of the jury are diverted from the guilt or innocence of the defendant to the perfidy of the informer. It is worth repeating, therefore, that the narrow cause sought by the defendant to be served was to get hold of the informer as a witness to the immaterial conversations taking place toward the rear of the bar which he might have heard and which might have proven beneficial to the defendant.

(3) The burden rested on the defendant, whose sole quest was the name of the informer, to show that he did not already have this information. The majority seem content to conjecture that he might not have known the man who, according to the majority opinion, betrayed his friend, lied to him and turned him over to a government narcotic agent. Surely judges are not supposed to be naive enough to assume that this defendant, experienced in dealing with narcotic enforcement officials and having paid the penalty twice for so doing, would make contact with a customer through a person who was a stranger to him, whose name he did not know. A surmise based upon such a premise would tax the credulity of the most innocent. The only reasonable conjecture, if we are to indulge in such, is that the informer was a confidant of the defendant, completely known and trusted by him.

No case has approached the holdings of the majority opinion here in reversing for failure to furnish the name of the informer. Even if the point reserved by the defendant in the court below went beyond his contention that he was entitled to know the identity of the informer to prove, if he could, the latter portions of the conversations between the defendant and the agent, the connection of the informer with this sale is not direct and vital as has been the case in the decisions relied upon. Roviaro v. United States,[5] the chief reliance of defendant, may be used to illustrate. There, the sale was made to the informer and the money was paid by the informer and he alone knew all of the facts upon which Roviaro's guilt or innocence would rest. The testimony of the witnesses introduced by the Government was largely confined to what they saw the informer do or heard him say as he had his dealings with Roviaro. Here, the informer had no part in the purchase and sale. He did not deliver the money, did not hear the conversation, and did not witness or have knowledge of the delivery of the heroin. At most, all he did was to act as broker, bringing together a willing buyer and a willing seller. And the Government did not prove this. It is learned only by examining the agent's reports, whose contents were revealed to the defendant alone, not to the jury.

(4) It would not be questioned that the action of the court below on defendant's requests was one of discretion. No denial of constitutional rights is involved, but merely the mechanics of trial, of locating and procuring the testimony of witnesses. Of such a situation Whitman's Federal Criminal Procedure, page 398, citing several Supreme Court cases, says:

"The harmless error rule as developed under the statute and continued by Rule 52(a) prevents an appeal from being turned into a quest for error, and prevents matters concerned with the mere etiquette of the trial and with the minuitiae and formalities of procedure from touching the merits of the result."

And cf. also Michelson v. United States, 335 U.S. 469, 480, 69 S.Ct. 213, 93 L.Ed. 168, and Indiviglio v. United States, supra, 249 F.2d at page 565.

5. 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

It is to me unthinkable that the strategy of defendant in setting up this man of straw with the obvious design of seeking to destroy him should be rewarded by a reversal of his conviction based, it seems to me, entirely upon "mights" and "maybes." The law is not fashioned of fabric so gossamer. It deals with probabilities alone, not° mere possibilities. At a time when the sale of narcotics is increasing by leaps and bounds, taking such a frightening toll of the health and happiness of the citizenship, particularly of the youth of this country,[6] I cannot bring myself to join in augmenting the already staggering burden of the Government on a showing as weak and unconvincing as that before us. I am compelled, therefore, to dissent.