318 So.2d 506 (1975)
James SMITH, Appellant,
v.
STATE of Florida, Appellee.
Nos. 74-845 to 74-848.
District Court of Appeal of Florida, Second District.
September 5, 1975.
Rehearing Denied September 23, 1975.
Frederick L. Mouser, Harris, Harris & Andrews, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
The appellant James Smith was charged, tried by jury, and found guilty of (1) sale of cocaine, (2) sale of marijuana, (3) possession *507 of cocaine, and (4) possession of marijuana. For each offense he was sentenced to six months to five years in prison with credit for time spent in the county jail.[1]
The issue now presented is whether it was reversible error for the trial court to refuse to permit appellant's counsel to develop the identity of the state's confidential informant and his relations with the appellant and undercover police officer where the state's evidence disclosed substantial participation by the informant in "setting up" a narcotics sale. We hold it was and we reverse.
Except for chemical identification of the marijuana and cocaine, the state's case consisted solely of testimony of Harry A. Herbst, a detective with the St. Petersburg Police Department, who testified substantially as follows: On the evening of December 20, 1973, and while working on an undercover basis, he and a confidential informant who had previously arranged a meeting with appellant, went to the appellant's place of employment in Largo where Herbst asked the appellant if he could "score some narcotics." As suggested by appellant, they returned during his "two-hour break," at which time appellant accompanied them to a residence in St. Petersburg occupied by Wayne Hilliard from whom Herbst sought to purchase "two lids of marijuana, plus a dime-packet of cocaine." While Herbst, appellant, and the informant returned to appellant's house to await delivery of the narcotics, the appellant rolled a marijuana cigarette and passed it to the other men. An hour later, Detective Herbst became concerned with Hilliard's failure to arrive, so he, along with the appellant and the informant, returned to the Hilliard residence. There Hilliard delivered the requested narcotics directly to the detective, and he and the informant returned the appellant to his place of employment.
Both prior to trial and during cross-examination, defense counsel sought to determine the identity of the confidential informant. The state's objection to disclosure on grounds of the "informer privilege" was sustained.
By not being allowed to develop the relations between Detective Herbst and the confidential informant, the appellant was effectively precluded from establishing his defense, i.e., that he was not involved in narcotics activities but merely was persuaded to go along with his friend, who was, in fact, the police informant. We make no comment on whether there was merit to such defense, but where the state's own witness testified that the informant arranged the whole affair which brought about events which resulted in offenses being committed, the defendant was entitled to an opportunity to have an informer who was an eye and ear witness to these events identified to the jury. Moreover, being prevented from inquiring about the relations between the officer and the informer hindered the appellant in attacking Detective Herbst's credibility.
As the dissenting opinion points out, the identity of the confidential informant may well have become an "open secret" after appellant called his "friend" to the stand. However, the court's ruling forced appellant to conduct his defense in an almost fictional atmosphere, in which he was prevented from equating the "confidential informant" mentioned in Herbst's testimony with the "friend." The resulting limitations on cross-examination of Herbst and direct examination of the "friend" imposed by the trial judge, as well as the restrictions on the scope of closing argument which would naturally be assumed by counsel *508 for the defense, constituted prejudicial and harmful error.
The mere presence of a police informant when narcotics are sold to an officer does not require a disclosure of the informer's identity, Doe v. State, Fla.App.3d 1972, 262 So.2d 11, but where that informant's identity or his communications are relevant and helpful to the defense or are essential to a fair determination of a cause, the privilege of non-disclosure must give way. Roviaro v. U.S., 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. Thus in Gilmore v. U.S., 5th Cir.1958, 256 F.2d 565, the court reversed the conviction of a defendant where, as here, the trial judge refused, on cross-examination of a narcotics agent to require revelation of the identity of an informant who had actively participated in setting up an "illegal buy" of drugs.
The law places the burden on the defendant to show why there should be an exception to the rule, which for obvious public policy considerations, permits the state to withhold the identity of informant. Treverrow v. State, Fla. 1967, 194 So.2d 250. This court has held, however, where an informer was an active participant in an illegal drug sale there is a basis for requiring disclosure of the identity of the informant. English v. State, Fla.App.2d 1974, 301 So.2d 813. To like effect are several recent drug cases where the state has used informants who, at request of an officer, have actively participated with an accused in commission of the offense. See, e.g., Davenport v. State, 1973, 50 Ala.App. 321, 278 So.2d 769; Hardy v. State, Miss. 1975, 313 So.2d 26; Sims v. State, Miss. 1975, 313 So.2d 27.
The use of informants is valuable in prosecution of crimes, especially in offenses such as illegal sale of narcotics where complaining witnesses are not common. Therefore, there is a proper justification for protecting their identity where possible. Nevertheless, it is necessary at times, in the interest of fairness, to distinguish, as we have done here, between persons who are simply informers and those whose participation make them essential witnesses to a crime for which a defendant is being prosecuted.
Reversed and remanded.
HOBSON, J., concurs.
McNULTY, C.J., dissents with opinion.
McNULTY, Chief Judge (dissenting):
I dissent.
My brethern would suggest that the situation here is substantively analogous to that in Roviaro v. United States[1] and in English v. State.[2] Not so. In those cases it was apparent that a confidential informant was present at certain material times and places relating to the commission of the offense involved and his identity and whereabouts were unknown by, and/or unrevealed to, the defendant whose rights of compulsory process were frustrated in that he was unable to secure a material witness having direct knowledge of circumstances which may be relevant to a valid defense. Here, the truth is that appellant knew the identity of the confidential informant before, during and after trial; and, indeed, called the informant as a witness in his own defense.
As noted by the majority, the only three people involved in the purchases giving rise to the instant charges, aside from the seller, Hilliard, were Herbst, the "confidential informant" and appellant. Appellant obviously knew who the "confidential informant" was, now known to be one Dickenman  he was a friend and fellow employee. True it is that at the time appellant *509 did not know that Dickenman was indeed working with Detective Herbst, who was himself working undercover. The problem herein arose, however, when on cross-examination of Detective Herbst appellant's counsel asked Herbst whether Dickenman was the confidential informant. The state objected invoking the "informer privilege" and the court sustained the objection. It is clear from a conference at the bench at that time that the court was well aware that appellant knew the identity of the confidential informant, and I am at a loss to understand why he thought the "informant privilege" was a viable consideration. The obvious purpose of the informant privilege is, of course, twofold: to protect the identity of an informer lest his usefulness as an informer be destroyed and to protect him from possible personal harm in retribution. Here, the cat was already out of the bag; so the "informer privilege" concept was inapplicable. Clearly the court erred on the matter.
But I am of the view that the error was harmless. The only restriction imposed by the court was that during the examination of both Herbst and Dickenman appellant was not permitted to identify him as the "confidential informant." In the end, it was obvious to everyone in the courtroom, including the jury, that Dickenman was the confidential informant. The simple process of elimination would compel that conclusion; so the defendant was not prejudiced merely because he couldn't hang a "confidential informant" tag on Dickenman. He had Dickenman under subpoena and called him as a witness. It is clear from the record that he had virtually every opportunity to establish by examination of Dickenman, and/or cross-examination if he proved hostile, to establish or elicit evidence of any facet of any defense legally available to him.
Roviaro and English are simply not applicable here. Appellant was deprived of no rights and he had a fair trial. His conviction herein should stand.
NOTES
[1] In view of our disposition of this case, we do not reach the issue whether these sentences violated the same transaction rule. Cf. Caivano v. State, Fla.App.2d 1973, 276 So.2d 245; Yost v. State, Fla.App.3d 1971, 243 So.2d 469.
[1] (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.
[2] (Fla.App.2d, 1974), 301 So.2d 813.