Gerald Duane GARRETT, Appellant,

v.

Terry MORRIS and Attorney General of the State of Missouri, Appellees.

No. 86–1481.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1987.

Decided April 3, 1987.

Rehearing and Rehearing En Banc Denied May 29, 1987.

**510**

Toby H. Hollander, St. Louis, Mo., for appellant.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before LAY, Chief Judge, HEANEY and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

This is an appeal from an order of the District Court denying Gerald Duane Garrett's 28 U.S.C. § 2254 petition for a writ of habeas corpus. Garrett argues, among other things, that the State's exercise of its peremptory challenges to exclude all black jurors from the petit jury panel at his murder trial violated his Sixth and Fourteenth Amendment rights. Because the record in this case demonstrates that the prosecutor used his peremptory challenges in an impermissibly discriminatory manner, we hold that Garrett's constitutional rights were violated. Accordingly, we reverse the judgment of the District Court and grant Garrett's petition for habeas corpus relief.

## I.

Garrett, who is black, was charged with capital murder in connection with the 1977 death of an elderly woman, Agnes Grote. He was tried in May 1980 in St. Louis County Circuit Court. Following a lengthy voir dire examination of prospective jurors, the prosecutor utilized three of his peremptory challenges to exclude the only three black venirepersons from the petit jury panel. When the defense moved for a mistrial on the ground that the prosecutor's

decision to strike those three jurors was based on improper racial considerations, the prosecutor volunteered the following explanation for his actions:

> I think the record should reflect that the fact that the three jurors were black was not my reason for striking them, but, instead, it was the background, education and knowledge to understand fairly sophisticated scientific evidence which I intend to bring to the jury in this case.

Tr. II at 295. Thereupon, the trial judge denied the motion for a mistrial, stating, "I have no evidence before me to indicate the prosecutor chose to make his challenges except as he thought to be appropriate under all the facts developed by the voir dire." *Id.*

Garrett was subsequently convicted of first-degree murder, and sentenced to life imprisonment. The Missouri Supreme Court affirmed his conviction and sentence on direct appeal. *State v. Garrett*, 627 S.W.2d 635 (Mo.) (en banc), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). Garrett then filed the present habeas corpus petition asserting multiple grounds for relief,[1] including the claim that the State's use of its peremptory challenges to exclude all black jurors from his petit jury panel deprived him of his Fourteenth Amendment right to equal protection of the laws, and his Sixth Amendment right to a jury chosen from a fair cross-section of the community. The District Court, adopting the report and recommendation of the United States Magistrate to whom the matter had been referred, rejected Garrett's claims and denied the petition. This appeal followed.

## II.

Garrett's claim that the prosecutor's use of peremptory challenges violated his right to equal protection of the laws is governed by *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain*, the Supreme Court recognized that "a State's purposeful or deliberate denial to

---

1. Garrett's § 2254 petition contained eight grounds for relief. He reasserts six of those claims on appeal. Because of our disposition of the jury-selection issue, we need not reach his other contentions.

Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." *Id.* at 203–04, 85 S.Ct. at 826. Under *Swain,* a defendant can make out a prima facie case of purposeful discrimination on proof that the prosecutor perverted the peremptory-challenge system by using his challenges "to exclude blacks from the jury 'for reasons wholly unrelated to the outcome of the particular case on trial,' or to deny to blacks 'the same right and opportunity to participate in the administration of justice enjoyed by the white population.'" *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 1720, 90 L.Ed.2d 69 (1986), *quoting Swain,* 380 U.S. at 224, 85 S.Ct. at 838. *Swain* nevertheless does not require an inquiry into a prosecutor's reasons for exercising his challenges in any particular case, holding instead that a presumption exists that the prosecutor is using the State's challenges to obtain a fair and impartial jury. 380 U.S. at 222, 85 S.Ct. at 837. That presumption may be overcome by showing that the prosecution has systematically excluded blacks from petit juries over a period of time, *id.* at 223–24, 85 S.Ct. at 837–38, but a defendant cannot, under *Swain,* establish an equal-protection violation "solely on proof of the prosecutor's use of peremptory challenges to strike black jurors at the defendant's own trial." *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 710, 93 L.Ed.2d 649 (1987).

*Swain* was overruled in part in *Batson v. Kentucky,* in which the Supreme Court held that a defendant "may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." 106 S.Ct. at 1722–23. Garrett concedes, however, that the ruling in *Batson* does not apply retroactively to a case on federal habeas review. See *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). Moreover, he has made no attempt to show the prosecution's systematic exclusion of black jurors from petit jury panels over time. Garrett nevertheless maintains that the record establishes a violation of the equal-protection principles of *Swain,* [2] and is sufficient to overcome the presumption protecting the prosecutor in this case. We agree.

The decision in *Swain* does not completely insulate a prosecutor's use of peremptory challenges in a given case. Although the Supreme Court declined to require an inquiry into a prosecutor's decision to remove blacks from a particular jury, we believe that where, as here, the prosecutor volunteers the reasons for his actions and makes them part of the record, he opens the issue up for review. The record is then no longer limited solely to proof that the prosecutor has used his peremptory challenges to strike all black jurors from the defendant's jury panel, and the presumption that the prosecutor has acted properly falls away. At that point, the court has a duty to satisfy itself that the prosecutor's challenges were based on constitutionally permissible trial-related considerations, and that the proffered reasons are genuine ones, and not merely a pretext for discrimination.

The Ninth Circuit employed precisely this analysis in *Weathersby v. Morris,* 708 F.2d 1493 (9th Cir.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984), another § 2254 habeas corpus case involving a prosecutor's use of peremptory challenges to exclude all black persons from the petit jury panel. In response to defendant Weathersby's objections, the prosecutor volunteered his reasons for exercising his challenges against the various black venirepersons. The Ninth Circuit

---

**2.** As noted earlier, Garrett also argues that the prosecutor's actions violated his Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community. This Court has repeatedly held that there is no Sixth Amendment exception to the equal protection analysis of *Swain.* See, *e.g., United States v. Childress,* 715 F.2d 1313, 1318 (8th Cir.1983) (en banc), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984). Although Garrett urges us to abandon that position in the face of *Batson,* we decline to consider this request. Relief is being granted on equal-protection grounds, and it is not necessary to consider separately Garrett's Sixth Amendment theory.

noted that where, as in *Swain*, the prosecutor does not volunteer his reasons for exercising peremptory challenges, the defendant wishing to establish an equal protection violation bears the heavy burden of showing that the prosecution has systematically used such challenges to exclude blacks over a period of time. *Id.* at 1495–96. However,

> [c]ases where the prosecutor at trial volunteers his or her reasons for using peremptory challenges to exclude from the petit jury an identifiable group, present a situation distinguishable from *Swain*. In such cases, the court does not conduct the type of inquiry barred by *Swain*. The prosecutor's motives have been voluntarily put on the record and the prosecutor can no longer be cloaked by the presumption of correctness. Our reading of *Swain*, convinces us that in such circumstances a court need not blind itself to the obvious and the court may review the prosecutor's motives to determine whether "the purposes of the peremptory challenge are being perverted," *Swain*, 380 U.S. at 224, 85 S.Ct. at 838, by excluding an identifiable group "from juries for reasons wholly unrelated to the outcome of the particular case on trial." *Id.*

*Id.* at 1496.[3] The Court then reviewed the record to determine whether the prosecutor's volunteered reasons for exercising his peremptory challenges were, in fact, based on permissible trial related concerns, and concluded that the challenges were proper in the context of that particular case.

The Ninth Circuit stated in *Weathersby* that its approach to the issue had been suggested by our decision in *United States v. Greene*, 626 F.2d 75 (8th Cir.), *cert. denied*, 449 U.S. 876, 101 S.Ct. 220, 66 L.Ed.2d 98 (1980). In *Greene*, the prosecutor used five of his six peremptory challenges to remove all prospective black jurors from the jury panel. This Court recognized that, under *Swain*, a prosecutor's decision to use his peremptory challenges to strike all black persons from a particular jury will be presumed proper *unless the record reveals that he made the challenges for impermissible reasons. Id.* at 76 (emphasis added). Because the record in *Greene* did not reveal whether the prosecutor excluded the five black jurors for permissible or impermissible reasons, the Court concluded that the record was insufficient to justify relief. *Id.* See also *United States v. Boykin*, 679 F.2d 1240, 1245 (8th Cir.1982) (no reversible error where record contained no facts from which to deduce that the prosecutor's exercise of peremptory challenges to exclude the only two blacks on the venire panel was for an impermissible reason).

The Ninth Circuit has stressed the importance of the prosecutor's voluntarily making the reasons for his peremptory challenges part of the record. See *United States v. Rabb*, 752 F.2d 1320, 1325 (9th Cir.1984), *cert. denied*, 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985) (court bound by presumption that the prosecutor's motives for excluding black jurors were acceptable where trial judge asked prosecutor to state his reasons, and prosecutor did not voluntarily place the reasons for his peremptory challenges in the record).[4] This Court has, however, con-

---

**3.** We reject the State's claim that Garrett may not rely on a *"Weathersby* theory" of relief because that theory was not litigated before the Missouri courts, and therefore does not satisfy the exhaustion requirements of § 2254, and because that theory was not presented to the District Court and thus may not be raised for the first time on appeal. Both the facts bearing on Garrett's jury selection claim, and the substance of his constitutional arguments concerning that claim have been presented to the courts at every stage of this litigation. The fact that the *Weathersby* case may not have been previously cited is immaterial. *Weathersby* is not a new "theory" of relief; it is simply a new citation in support of a claim consistently urged throughout this case.

**4.** *But see United States v. Danzey*, 476 F.Supp. 1065, 1067 (E.D.N.Y. 1979), *aff'd*, 620 F.2d 286 (2d Cir.), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980) (*Swain* read as completely barring review of prosecutor's motives for exercising challenges, even where prosecutor volunteers an explanation). We agree with the Ninth Circuit that *Swain* should not be read so broadly. Indeed, Justice White, the author of *Swain*, indicated as much in a footnote to his concurring opinion in *Batson*, in which he stated that it would not have been inconsistent with

sidered a prosecutor's reasons for excluding blacks even where those reasons were offered in response to an inquiry by the court. For instance, in *United States v. Andrade*, 788 F.2d 521 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986), the defendants moved for a mistrial after the prosecutor peremptorily struck all prospective black jurors. The District Court took the motion under submission, and requested briefs and affidavits on the matter. After reviewing the submissions, including an affidavit from the prosecutor in which he stated his reasons for striking each black person from the jury panel, the District Court denied the defendants' motion.

On appeal, the defendants claimed that the District Court erred in failing to grant a mistrial, because the prosecutor had intentionally excluded blacks from the jury in violation of their Sixth and Fourteenth Amendment rights. They argued that the *Swain* requirement of establishing the systematic exclusion of blacks did not apply because the prosecutor had stated the reasons for his actions on the record, and suggested that this Court should, in any event, reconsider the law of peremptory challenges in light of recent developments in the area.[5] The Court declined the invitation to re-examine the law, but carefully reviewed the prosecutor's explanation for striking the black jurors in light of the record in the case. We found clear support in the record for the government's claim that the prosecutor's challenges were exercised for permissible trial-related concerns rather than race, and therefore concluded that the defendants' constitutional rights had not been violated.[6]

In the present case, even assuming that the prosecutor had no duty to justify his actions under *Swain,* by volunteering his reasons for striking the black jurors, he made those reasons part of the record subject to our review. He is no longer "cloaked by the presumption of correctness," and we may review his motives "to determine whether 'the purposes of the peremptory challenge are being perverted.'" *Weathersby,* 708 F.2d at 1496 (quoting *Swain,* 380 U.S. at 224, 85 S.Ct. at 838).

As noted earlier, the prosecutor merely offered a blanket assertion that all three excluded black jurors lacked the "background, education and knowledge" to understand the scientific evidence he intended to present. The record reveals, however, that the prosecutor's questions to the assembled venire focused mainly on prior jury service, acquaintance with prospective witnesses, past association or involvement with the criminal-justice system, knowledge or information about the case, and past area of residence. It was defense counsel who demonstrated concern with the education and background of the prospective jurors.

The prosecutor was, of course, entitled to rely on information elicited by defense counsel in making his jury selection. Even so, his proffered explanation does not withstand scrutiny. All three prospective black jurors had at least a high-school education, and one needed only three additional hours of credit to complete a college business degree. Among the

---

*Swain* "for the trial judge to invalidate peremptory challenges of blacks if the prosecutor, in response to an objection to his strikes, stated that he struck blacks because he believed they were not qualified to serve as jurors, especially in the trial of a black defendant." *Batson,* 106 S.Ct. at 1725 n.* (White, J., concurring).

5. *Batson v. Kentucky* was then pending before the United States Supreme Court.

6. See also *United States v. Jackson,* 696 F.2d 578, 593 (8th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983) (government's response to District Court's inquiries about each peremptory strike exercised against a black venireman clearly showed the govern-

ment did not exercise its challenges improperly). *But cf., United States v. Thompson,* 730 F.2d 82, 84–85 (8th Cir.), *cert. denied,* 469 U.S. 1024, 105 S.Ct. 443, 83 L.Ed.2d 369 (1984) (defendant's claim that government violated his constitutional rights by using peremptory challenges to remove almost all blacks from the jury panel in the belief they would be more sympathetic to defendant's designated black alibi witnesses rejected in the face of the holding in *Swain* that use of peremptory challenges to remove all black jurors from the jury panel in a single case will not support a claim of racial discrimination).

white jurors remaining on the panel, two had not completed high school, and two others never specified the extent of their education (one explained only that he had been a factory worker for thirty-two years, and the other stated that he had been working as an electrician since he was seventeen years old). Only two of the jurors selected had been graduated from college; a third had an associate degree from a junior college; and the remaining jurors had a high-school education. It is thus difficult to credit the prosecutor's statement that he struck the black jurors on the ground that they "lacked education."

Indeed, the record of voir dire reveals no quality of education, experience, or background characteristic only of the black jurors other than race. Nor did the three black jurors appear to have much in common with one another except race: they were of different sexes, were engaged in different occupations,[7] and apparently lived in different areas in St. Louis County. None expressed any views indicating partiality to the defense. In fact, one stated that he found the nature of the crime (the brutal murder of an elderly woman) to be particularly distasteful, Tr. II at 155, suggesting if anything an attitude favorable to the prosecution. Furthermore, we can discern from the record no indication that the black jurors had any difficulty understanding or responding to questions which set them apart from white jurors who remained on the jury panel. And yet, in offering an explanation for rejecting the black jurors, the prosecutor lumped them together as a group rather than treating them as individuals. The trial court's immediate acceptance of that explanation at face value compounds our concern about the adequacy and genuineness of the proffered explanation.

In short, the reasons volunteered by the prosecutor are simply not fairly supported by the record. Therefore, the state court's implicit factual finding that the prosecutor had no impermissible motive is not entitled to any presumption of correctness. See 28 U.S.C. § 2254(d)(8). The prosecutor's rationale—the blacks' purported lack of education, background, and knowledge—seems clearly pretextual in light of his decision not to strike white jurors who differed in no significant way. Nor can we discern from the record any other legitimate trial-related reasons for striking all three black jurors. Despite the prosecutor's disclaimer of racial motives, it appears that he was in effect excluding the blacks from the petit jury in this case in the belief that, as blacks, they were not qualified to serve as jurors in the trial of this black defendant. See *Batson*, 106 S.Ct. at 1725 n.* (White, J., concurring). In the circumstances, we are constrained to conclude that the proffered explanation was a pretext for purposeful discrimination, and that Garrett's constitutional rights were violated.

Accordingly, we reverse the judgment of the District Court, and remand this matter with directions to grant the petition for a writ of habeas corpus if the State does not begin new trial proceedings within such reasonable period as the District Court may fix.

---

7. Two were male, one was female. One worked at Blue Shield as a clerk; another was a welder who had worked at General Motors for twenty-seven years; the third had been employed as an employee benefit representative at McDonnell-Douglas for twelve years.