**Emanuel George DEVOSE, Appellee,**

v.

**Larry NORRIS, Director, Arkansas Department of Correction, Appellant.**

No. 94–3181.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1995.

Decided April 21, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied May 30, 1995.*

---

* Fagg, Bowman, Beam, Hansen and Morris Sheppard Arnold, Circuit Judges, would grant the suggestion for rehearing en banc.

Darnisa Evans Johnson, Little Rock, AR, argued, for appellant (Winston Bryant, on the brief).

Michael R. Davis, Conway, AR, argued, for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

Emanuel George Devose was convicted after a jury trial in Arkansas state court of delivery of a controlled substance and was sentenced as a habitual offender to twenty-seven years in prison. Devose sought reversal of his conviction on direct appeal to the Arkansas Court of Appeals, which affirmed his conviction. *Devose v. State*, No. CACR–89–3, 1989 WL 64206 (Ark.App. June 14, 1989). After unsuccessfully seeking post-conviction relief from the Arkansas Supreme Court, *Devose v. State*, No. CR89–185, 1990 WL 4850 (Ark. Jan. 22, 1990) (unpublished), Devose filed a petition for writ of habeas

corpus in the United States District Court for the Eastern District of Arkansas.

In his petition Devose raised a number of issues. Only three issues were considered on the merits by the district court: (1) his conviction is unconstitutional because the jury was chosen in a racially discriminatory manner contrary to the dictates of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (2) the trial court erred in failing to require the prosecution to disclose the identity of a confidential informant; and (3) the prosecution failed to exercise due diligence in investigating the credibility of its key witness and disclosing impeaching evidence to defense counsel.[1] After two evidentiary hearings, the district court found that all three issues were meritorious and that each issue individually required the court to set aside Devose's conviction. The court granted Devose's petition for habeas corpus and directed the State to release Devose on August 30, 1994, or to retry him within sixty calendar days from that date if it intended to reprosecute him on the instant offense. The State appeals. We affirm the district court on the *Batson* and confidential informant issues, but reverse on the due diligence issue. Accordingly, we find that the district court properly granted Devose's petition for writ of habeas corpus.

## I. DISCUSSION

### A. *The Batson Issue*

At Devose's trial a total of twenty-two prospective jurors were questioned to serve either as jurors or the alternate juror. Ten of those prospective jurors specifically stated that they had served on previous juries, including four of the five prospective black jurors. The first black prospective juror called stated that she had prior jury experience and was accepted as a juror. The next three black venirepersons called (including one prospective alternate juror)—all of whom

stated they had previously served on juries—were stricken by the State. The one black venireperson who did not state that she had previously served on a jury was chosen as an alternate juror after each side exercised its one peremptory challenge for the alternate juror. The State thus exercised a total of three peremptory strikes, all of which were used against blacks.[2]

The defense counsel objected to the process by which the jurors were selected. The prosecutor responded, noting that "it's not that the State has excused [the black prospective jurors] because they've done a good job ... the State has excused them because they have worked so many trials. We feel like that they have been burned out at this point...." Trial Tr. at 66–68. After considering the matter, the trial court accepted the prosecutor's reason for striking the black prospective jurors and empaneled a jury that included one black juror and one black alternate juror.

The district court held its first hearing on Devose's habeas petition on December 16, 1993. At the hearing the prosecutor stated that she used two peremptory challenges against the two black prospective jurors because both had served on juries in several cases in which she had recently been involved. Appellant's Br. at 4. Based on her previous experience with these jurors, she stated she had reason to believe that they "did not appear to be functioning up to capacity," that "[t]hey were burned out...." *Id.* at 5. A second hearing was held before the district court on July 7, 1994, at which the prosecutor could not precisely recall her reason for striking the two black prospective jurors.[3] After considering the prosecutor's testimony, the court held that Devose established a prima facie case of purposeful discrimination in the State's selection of jurors. It further held that the prosecutor failed to articulate a believable neutral explanation for striking the two black prospective jurors and

---

1. This issue was raised *sua sponte* by the district court.

2. The prosecution was allowed six peremptory strikes during the selection of the jury and one peremptory strike during the selection of the alternate juror.

3. The prosecutor only recalled striking a black woman who was admonished by the trial judge for arriving to court late. Appellant's Br. at 5.

the one black prospective alternate juror. Specifically, the court found that

> white jurors with prior experience were seen by the State as having a clearer understanding of certain issues, making them desirable jurors. Black jurors with prior experience were perceived by the State as suffering from juror burnout, even when they specifically stated that they were not so suffering, or that they would do what was "right and correct." ·

*Devose v. Norris,* 867 F.Supp. 836, 844 (E.D.Ark.1994) [hereinafter Dist.Ct.Op.].

Appellant argues that because one black person was seated as a juror, as well one black alternate, Devose failed to establish a prima facie case of purposeful discrimination. Even assuming that Devose established a prima facie case of purposeful discrimination, appellant argues the reasons offered by the prosecutor for striking the two black prospective jurors and the one black prospective alternate juror were "clearly racially neutral." Appellant's Br. at 6.

■ The Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise qualified persons from the jury panel solely on account of their race. *Batson,* 476 U.S. at 86, 106 S.Ct. at 1717 (1986). Under *Batson* in order to establish an equal protection violation, the defendant must first establish a prima facie case of purposeful discrimination in the selection of the jury panel. *Id.* at 96, 106 S.Ct. at 1723. To establish a prima facie case, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his race from· the venire. *Id.* He then " 'must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [his peremptory] practice to exclude the veniremen from the petit jury on account of their race.' " *United States v. Battle,* 836 F.2d 1084, 1085 (8th Cir.1987) (quoting *Batson,*

476 U.S. at 96, 106 S.Ct. at 1723). Once the defendant has established a prima facie case of race discrimination, the government has "the burden of articulating a clear and reasonably specific neutral explanation for removing a venireperson of the same race as the defendant." *United States v. Cloyd,* 819 F.2d 836, 837 (8th Cir.1987).

■ Whether an explanation is neutral is a question of comparability. "It is well-established that peremptory challenges cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged." *Doss v. Frontenac,* 14 F.3d 1313, 1316–17 (8th Cir.1994); *see Reynolds v. Benefield,* 931 F.2d 506, 512 (8th Cir.), *cert. denied,* 501 U.S. 1204, 111 S.Ct. 2795, 115 L.Ed.2d 969 (1991); *United States v. Lewis,* 892 F.2d 735, 736–37 (8th Cir.1989); *Garrett v. Morris,* 815 F.2d 509, 514 (8th Cir.), *cert. denied sub nom. Jones v. Garrett,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987).

■ As noted above, the primary justification offered by the State for striking the two black prospective jurors and the one black prospective alternate juror was its concern that the jurors had previous jury experience and therefore suffered from jury burnout. Although juror burnout could plausibly pass as a nondiscriminatory explanation for striking venirepersons, it cannot be considered without viewing the totality of the circumstances. The salient fact appellant neglects to mention is that, of at least five prospective white jurors who stated they had previously served on juries,[4] none were asked by the prosecutor about the effect of juror burnout on their ability to serve as jurors. Quite to the contrary, the prosecutor, in questioning one of the white prospective jurors about his prior jury experience, suggested that the individual was well suited to serve as a juror now that he had "a clear understanding of what is meant by beyond a reasonable doubt."[5] Trial Tr. at 33. Apart from jury

---

4. Two jurors indicated that they had served "several" times; one juror indicated that she had served twice before; one juror stated she had "sat on a jury before"; another juror indicated she had previously served on a jury. Dist.Ct.Op. 867 F.Supp. at 839–40.

5. Black prospective jurors, conversely, were treated with rather grave skepticism when questioned by the prosecutor about the effect of their prior jury experience on their ability to serve as jurors again.

burnout, the prosecutor cited no other distinguishing factors that would explain her decision to exclude three of the four black venirepersons who stated they had previously served as jurors and to include white jurors who also stated they had prior jury experience. *See Garrett*, 815 F.2d at 513.

Because the government failed to establish "that any reason given for its exercise of strikes against black jurors had been equally applied to similarly situated white jurors," *Reynolds*, 931 F.2d at 512, we are left with the inescapable conclusion that the prosecutor's rationale for excluding black prospective jurors—"juror burnout"—was pretextual. Despite the State's claim that race was not a motivating factor in its selection of jurors, it appears that blacks were excluded from the jury because they were black, and "as blacks . . . were not qualified to serve as jurors in the trial of this . . . defendant." *Garrett*, 815 F.2d at 514. We therefore conclude that the district court did not err either in finding that Devose stated a prima facie case of purposeful discrimination or in concluding that the prosecutor failed to articulate race-neutral reasons for striking the black prospective jurors.

## B. *The Confidential Informant Issue*

█ At trial Robert Thomas, an undercover police officer with the El Dorado, Arkansas, Police Department, testified that the drug transaction involving Devose occurred in the following manner: On May 21, 1988, at approximately 1:00 a.m., Officer Thomas drove to Third and State Street in Pine Bluff, Arkansas. A confidential informant riding with him noticed an individual known as Curtis Jones walking in the area. The informant called Jones to the passenger side of the car and asked him whether he had any cocaine rocks for sale. Jones said that he had one rock left and that he would sell it for $25. Officer Thomas told Jones that he wanted to

buy the cocaine rock and handed Jones $25 in exchange for the rock. Trial Tr. at 88.

Prior to trial Devose filed a motion to disclose the identity of the confidential informant. Specifically, he requested the name, address, telephone number, and anticipated testimony of the informant to enable him to properly prepare his case. The State failed to respond to his request, and Devose again asked the court to order the prosecutor to disclose the informant's identity. The trial court denied Devose's motion on the basis of the State's representation that the informant could not provide exculpatory information.

Prior to the July 7 hearing before the district court, the informant testified at a hearing before a magistrate judge. At the hearing defense counsel elicited from the informant that he was with Officer Thomas on the date in question and that Thomas purchased "some rock cocaine" from "Curtis Jones." Dist.Ct.Op., 867 F.Supp. at 846. The informant further stated that he could not remember "too good" what Jones looked like. *Id.* The informant was then shown a photo spread containing pictures of Devose and eleven other men. Upon viewing the photo spread, the informant stated: "I see Emanuel. But I don't see Curtis Jones." [6] *Id.* at 846. When asked whether he bought the rock cocaine from Curtis Jones, the informant replied: "I know we made a buy—made buys off of Devose but we didn't make no buy—to my knowledge off of no Curtis Jones that I know of." *Id.* The informant further testified that he had known Devose for years and had gone to school with Devose's brother, Anthony Devose.

The informant's account of what happened on the night in question changed markedly in his testimony before the district court. At the July 7 district court hearing the informant stated that he never told Officer Thomas that the individual who sold Thomas the cocaine was Curtis Jones.[7] *Id.* at 847. He

---

6. The district court noted that because the informant was told Devose's name prior to the hearing, "[c]learly he was expected to identify Mr. Devose." Dist.Ct.Op., 867 F.Supp. at 846 n. 4. Thus, the court concluded, "[t]he photographic identification was . . . rendered meaningless." *Id.*

7. At the hearing the prosecutor was questioned about whether the confidential informant could provide exculpatory information. She stated that she did not know anything about the informant and that she had neither spoken with him nor read a statement prepared by him. In fact, she stated she did not know the name of the

stated that he only "knew of" someone named Curtis Jones.[8] *Id.* He further testified that he told Officer Thomas that the individual in question was "Sleepy." *Id.* Devose submitted affidavits stating that he has never been known as "Sleepy."[9]

Among the reasons the district court cited for finding that the trial court erred in failing to order disclosure of the informant were Officer Thomas's identification of Devose, which it found was "fraught with inconsistencies,"[10] and the "extremely shaky" testimony of the informant. *Id.* at 848.

■■■ In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court set forth the governing test for disclosure of confidential informants: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause," the privilege to withhold disclosure of the informer's identity must give way. *Id.* at 60–61, 77 S.Ct. at 628. Because there is no litmus test for determining whether disclosure is warranted, courts must consider the " 'particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " *United States v. Harrington,* 951 F.2d 876, 877 (8th Cir.1991) (quoting *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 628). One of the most relevant factors to be weighed by the court is whether the evidence is material to the accused's defense or a fair determination of the cause.

*United States v. Barnes,* 486 F.2d 776, 778 (8th Cir.1973). Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense.[11] *Id.* at 778–79; *see United States v. Roberts,* 388 F.2d 646, 650 (2d Cir.1968) (government required to disclose informant's whereabouts where informant was witness to alleged sale of narcotics); *Gilmore v. United States,* 256 F.2d 565, 567 (5th Cir.1958) (testimony of informant who was "active participant in setting the stage" for drug transaction was material and relevant). Thus, where an informant is shown to be a material witness and the government has no intention of using the informant as a witness, "it owes a duty to make every reasonable effort to have the informant made available to the defendant to interview or use as a witness, if desired." *Barnes,* 486 F.2d at 779–80.

The tenuousness of the informant's testimony regarding who was involved in the drug transaction compels us to conclude that the trial court should have disclosed the identity of the informant. As an eyewitness to the offense, the informant could have shed sorely needed light on the events that took place—specifically, who sold the cocaine to Officer Thomas. Had the informant's identity been disclosed, Devose could have interviewed the informant and either called him as a witness at trial or used the information obtained during the interview to impeach his credibility. As it was, Devose was precluded from even cross-examining him because the government declined to call him as a witness

informant until the hearing. Dist.Ct.Op. at 845–46.

8. The district court was unable to find any indication in police or other records that Devose was known as "Curtis Jones."

9. Devose's brother, Anthony, submitted an affidavit stating that he is known as "Sleepy." Anthony Devose's prison records reflect "Sleepy" as an alias. The district court noted that although Anthony Devose was incarcerated at the time of the hearing, he was free at the time of the instant offense. Dist.Ct.Op., 867 F.Supp. at 847.

10. At trial Officer Thomas stated that Devose was 6'2" to 6'4", and that he had dark skin and wavy black hair. Dist.Ct.Op. at 848. When asked by

defense counsel if Devose "looked now like he looked [at the time of the offense]," Thomas replied, "No, he didn't. His hair was straighter." *Id.* at 848. Devose claims to be 6'8" to 6'9".

11. Disclosure of narcotics informants generally is thought to be important because

"[narcotics] agents are usually not trained officers—often they are themselves addicts or former addicts. The Government must know that an eager informer is exposed to temptations to produce as many accuseds as possible at the risk of trapping not merely an unwary criminal but sometimes an unwary innocent as well." *Barnes,* 486 F.2d at 780 (quoting *Velarde–Villarreal v. United States,* 354 F.2d 9, 13 (9th Cir. 1965)).

at trial.[12]   Unlike cases in which the informant acts as a mere "tipster," *e.g.*, merely provides information but does not witness or participate in the drug transaction, *see Johnson v. Wyrick*, 653 F.2d 1234, 1239 (8th Cir.1981), *cert. denied*, 454 U.S. 1149, 102 S.Ct. 1013, 71 L.Ed.2d 302 (1982); *United States v. Skramstad*, 649 F.2d 1259, 1265 (8th Cir.1981), the informant in the instant case was an active participant in the drug transaction and witnessed first hand the events that took place.

We are additionally persuaded that disclosure should have been ordered given that neither the informant nor Officer Thomas was asked prior to trial to identify Devose as the person who participated in the drug transaction.   Our concern is heightened by the fact that it is questionable whether Devose was properly identified at the time of his arrest as the individual involved in the offense.[13]   All of these factors compel our finding that disclosure of the informant's identity was essential to a fair determination of Devose's case.   Accordingly, we hold that the district court did not err in finding that Devose was prejudiced by the trial court's failure to order disclosure of the informant's identity.

### C. The Due Diligence Issue

█   At Devose's trial the credibility of Officer Thomas was a key issue.   Prior to trial Thomas had been disciplined for theft and making false statements to a supervisor and a prosecuting attorney while a police officer.[14]   The prosecutor was not aware of this information at the time of trial, however, and did not disclose the information to defense counsel in response to his request un-

der *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).   Devose did not raise the State's failure to disclose Officer Thomas's personnel file as an issue in state court or in his federal habeas petition.   The issue comes before us now having been raised *sua sponte* by the district court.

Because Devose failed to raise as a basis for habeas relief the prosecutor's failure to disclose Officer Thomas's personnel file, we find that he has procedurally defaulted this claim.   *See Prince v. Lockhart*, 971 F.2d 118, 121 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1394, 122 L.Ed.2d 768 (1993). Counsel was appointed to represent Devose after he filed his habeas petition but prior to the district court hearings.   Despite the fact that Devose was represented by counsel, however, his petition was never amended to include the prosecutor's failure to discover and disclose Officer Thomas's disciplinary reports.   As far as we are able to determine, Devose did not raise this issue at either of the two evidentiary hearings before the district court.   Because Devose was represented by counsel at these proceedings, he is not entitled to the liberal reading normally accorded *pro se* petitions.   *Id.* at 121 n. 5. Accordingly, Devose is procedurally barred from relying on the prosecutor's failure to investigate and disclose Officer Thomas's personnel file as a basis for federal habeas relief.

## II.   CONCLUSION

We agree with the district court that the writ of habeas corpus should issue with respect to the *Batson* issue and the trial court's failure to order disclosure of the confidential

---

**12.** Cross-examination would have permitted the jury to hear any number of relevant pieces of information, including

whether charges ... were or were not then pending against [the informant], whether immunity or preference had been promised him if he undertook to work up or work on other cases, whether he was an addict, whether he had previously known defendant or had dealings with him that might have given rise to the hope of vengeance....

*Gilmore*, 256 F.2d at 567.

**13.** Devose was not arrested immediately after the alleged drug transaction.   The State, rather, filed

an information charging "Curtis Jones" with the instant offense.   On June 3, 1988, thirteen days after the incident, Devose was arrested on separate charges.   According to Devose, an officer asked him then whether his name was Curtis Jones.   Devose told the officer that he was not Curtis Jones.   The officer said that he thought Devose was, in fact, Curtis Jones.   On June 16, 1988, a new information was issued, charging "Emanuel George Devose, a/k/a/ Curtis Jones" with delivery of a controlled substance.   Dist.Ct. Op. at 846.

**14.** Officer Thomas resigned from the El Dorado Police Department on April 11, 1990.

informant's identity. We disagree with the district court, however, that the prosecutor's failure to discover and disclose Officer Thomas's disciplinary reports is a basis on which Devose is entitled to habeas relief. Because each of the first two issues individually requires the court to set aside Devose's conviction, we remand the case to the district court with directions to set a new date for Devose to be either released or retried.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

Although I agree with the court that one of petitioner's claims is barred, I respectfully dissent from the rest of the court's opinion in this case.

### I.

The court asserts that it is left "with the inescapable conclusion that the prosecutor's rationale [for excluding black jurors] was pretextual," a conclusion to which I would be unable to subscribe even if we were charged with reviewing this record *de novo*, which, although the court does not say so, we are not. We are, in fact, bound to give the state court's determination of the prosecutor's state of mind a presumption of correctness that is not rebutted unless that determination "is not fairly supported by the record." (*See* 28 U.S.C. § 2254(d), § 2254(d)(8), a statute to which the court, in common with the trial court, makes no reference.) The prosecutor gave a race-neutral reason for making her strikes and the state trial court accepted it as true. I see no reason whatever to hold that that finding is not fairly supported by the record as the statute requires us to do before we overturn a state-court determination. This case is wholly unlike *Garrett v. Morris*, 815 F.2d 509 (8th Cir.), *cert. denied sub nom. Jones v. Garrett*, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987), the only state habeas case that the court cites in support of its holding. In that case, the facts on which the prosecutor claimed to have based his decisions to strike were altogether missing from the record, and therefore our court held (and quite rightly) that the state trial court's somewhat perfunctory acceptance of the prosecutor's explanation was not

fairly supported by the record. In addition to failing to adhere to the relevant statutory requirement, moreover, the court essentially convicts the prosecutor here of perjury and of deliberately violating a constitution that she has sworn to uphold. Race-conscious decisions may well do much to undermine public confidence in our legal system, but unfounded allegations of conscious wrongdoing by the government do great damage as well.

### II.

Nor do I believe that the court is justified in granting relief to the petitioner on the ground that the government failed to disclose to him the identity of the confidential informant. In the first place, the hearing at which the confidential informant testified occurred almost six years after the trial, and thus his testimony is of dubious relevance so far as what he might have said at trial is concerned. We cannot really know what his recollections would have been at that time, and petitioner, of course, has the burden of proving an error of constitutional dimensions before he is entitled to habeas relief. Secondly, the confidential informant positively identified petitioner as the seller of cocaine from a photographic lineup that was prepared by both petitioner's and the government's counsel. Lastly, and most importantly, though the court relies on *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and *United States v. Barnes*, 486 F.2d 776 (8th Cir.1973) (as did the district court), no mention appears of *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), nor of our line of cases following it (*see, e.g., United States v. Parker*, 836 F.2d 1080 (8th Cir. 1987), *cert. denied*, 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988)). In *Bagley*, the Supreme Court held that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. Given the fact that both the police officer and the confidential informant would have almost certainly identified petitioner at trial as the perpetra-

tor of the offense, I cannot conclude that there is a reasonable probability, or even a realistic possibility, that he would have been acquitted. I do not see how anyone could find in this record evidence that is "sufficient to undermine confidence in the outcome" of petitioner's trial. *Id.*

### III.

I therefore respectfully dissent and would reverse the district court.