UNITED STATES of America, Appellee,

v.

Quontrell Wayne LEWIS, Appellant.

No. 89–1383.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 9, 1989.

Decided Dec. 22, 1989.

Alan Jay Koshner, St. Louis, Mo., for appellant.

Steven E. Holtshouser, St. Louis, Mo., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Quontrell Wayne Lewis appeals his conviction for possession of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1) (1982). Although Lewis raises several issues for review, we treat only the *Batson* issue

closely. We affirm with the following limited review of the facts and the law.

## I. BACKGROUND

Lewis was arrested in St. Louis on the night of April 22, 1988. St. Louis police officers had been observing his activities on the suspicion that he was bringing drugs into the area from Minneapolis–St. Paul. The day before his arrest, Lewis consented to a search of his possessions as he deplaned at Lambert Airport in St. Louis. No contraband was uncovered, but Lewis was carrying nearly $2,000 in cash. The police next observed Lewis on the night of his arrest outside his grandmother's apartment after an informant indicated Lewis might be selling drugs from there. The officers made the arrest after watching Lewis and others come and go over several hours and after Lewis tossed a brown vial into his car as they approached him. Lewis was arrested at the car which the officers then searched.

After obtaining consent from Lewis' grandmother, the officers searched her apartment and found several items, including one-half kilogram of cocaine, belonging to Lewis which connected him both to the apartment and to drug trafficking. There is a dispute as to how the events transpired that night, but both the magistrate[1] and the district court[2] concluded that a valid arrest was made and valid searches conducted.

Lewis' venire panel had two black persons, one of whom was struck peremptorily by the prosecution. Lewis made a claim that the strike was racially motivated because fifty percent of the black venirepersons were struck (1 of 2). The district court ruled that no prima facie case had been made out under *Batson* by the percentages alone.

During the trial a witness for the prosecution, Detective Klier, was sequestered with several defense witnesses and apparently engaged them in conversation before they testified. Lewis moved for a mistrial after he voir dired one of his witnesses about her conversation with Klier. The district court denied the motion and the trial proceeded. The jury returned a guilty verdict. Lewis was sentenced to 51 months imprisonment and three years of supervised release.

## II. DISCUSSION

■ First we address Lewis' *Batson* claim. The prosecutor struck one of two black venirepersons with a peremptory strike. Lewis alleged the strike was racially motivated because it struck fifty percent of the black persons available. The district court concluded that without more than the percentage claim Lewis did not make out a prima facie case. This court has not definitively said by what standard we review a finding that no prima facie case has been made under *Batson*, but we have held that reliance on percentages (such as 50%) alone does not make out a prima facie case under any standard. *United States v. Fuller*, 887 F.2d 144, 146–47 (8th Cir.), *petition for cert. filed*, No. 89–6215 (U.S. Dec. 4, 1989).[3]

While it is true that striking a black venireperson for racial reasons is always violative of the Constitution, it is not true that all peremptory strikes of black venirepersons are for racial reasons. A defendant must still make out a prima facie case, i.e., the defendant must raise an inference of racial motivation on the part of the prosecutor. Such an inference is raised in numerous ways, for example, by compari-

---

1. The Honorable Robert D. Kingsland, United States Magistrate for the Eastern District of Missouri.

2. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

3. Lewis' reliance on *United States v. Johnson*, 873 F.2d 1137 (8th Cir.1989), to suggest otherwise, is misplaced. There we reversed the district court where it had relied on the government's interpretation of *Batson* to the effect that no prima facie case was made where black persons were seated on the jury, despite the use of peremptories against other black panel members. As well, in *Johnson*, the appellant demonstrated unequal use of strikes against black panel members as compared to white panel members. The record in Lewis' case makes no such demonstration.

son to the treatment of white venirepersons who are similarly situated by occupation, residency, cultural lifestyle, relationship, acquaintances, etc. or by other unequal treatment of black venirepersons that evidences their exclusion by race. Lewis has pointed to nothing in the course of voir dire (or anywhere else), other than the percentages, that suggests racial motivation was the basis for the strike used. On this record, under any standard, we cannot say the decision of the district court was in error.

■ In fact, in order to reverse the district court, we would have to declare that as a matter of law the use of one peremptory strike to remove one of two black venirepersons is itself a pattern of race discrimination, i.e., a prima facie case under *Batson*. We have rejected that argument before, *United States v. Ingram*, 839 F.2d 1327, 1330 (8th Cir.1988); *see also United States v. Washington*, 886 F.2d 154, 156 (8th Cir.1989) (two of six black venirepersons struck did not alone make out prima facie case), and do so again, particularly because to do otherwise would remove from the district court the power entrusted to it by *Batson* to make its own findings on discrimination patterns in each case. *See Batson v. Kentucky*, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). We note that percentages may evidence a pattern of racial discrimination where the use of peremptories blatantly excludes most black venirepersons, and the government refuses to state reasons for its strikes as in *United States v. Battle*, 836 F.2d 1084, 1085 (8th Cir.1987). *See also United States v. Hughes*, 880 F.2d 101, 102–03 (8th Cir.1989) (voir dire evidenced racial discrimination making a prima facie case, that remained unrebutted) (opinion on rehearing from 864 F.2d 78 (8th Cir.1988)). Lewis' case, however, is otherwise.

Because no prima facie case was shown, the government was not required to pro-

vide an explanation for its strike, and we need consider the question no further.

We turn next to Lewis' claims under the Fourth Amendment. We examine the district court's findings on the probable cause to arrest Lewis, search his car, and the validity of his grandmother's consent to search under the clearly erroneous standard. *United States v. Eisenberg*, 807 F.2d 1446, 1449 (8th Cir.1986). We find no error.

■ After surveillance of Lewis' activities both at St. Louis' Lambert Airport and at his grandmother's apartment, the police officers had probable cause to arrest Lewis when they approached him and he tossed a brown vial into his car. The tip the officers received that Lewis might be keeping drugs at his grandmother's apartment only added to their probable cause to arrest,[4] but we believe they could have proceeded even without that information, based solely on their observations of Lewis. The search of his car at the scene was made incident to a valid arrest (after he threw the vial into the car); and the later inventory search of the car was valid. *See United States v. Davis*, 882 F.2d 1334, 1338–39 (8th Cir. 1989).

■ While Lewis' grandmother, Leora Heard, did testify at trial that she did not understand the consent form, there was no evidence that she was coerced into signing it. Though Ms. Heard may not have understood the formalities of the consent form, she consented to the search believing she had nothing to hide. Record at 294–95. Her testimony at trial, absent any allegation of coercion and supporting facts, does not itself taint the search after the fact. The record evidences valid consent and, thus, a valid search.

Both the magistrate and the district court properly examined the evidence with respect to the arrest and searches and correctly found no constitutional violation.

---

4. Lewis argues he was denied confrontation rights by the failure of the district court to require disclosure of the informant. We disagree; the informant in this case did not participate in or witness the offense with which Lewis was charged. The informant was only a "tipster" and his disclosure was not vital to a fair trial for Lewis. *See United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir.1987).

Next we consider Lewis' allegation of witness tampering for which he requested a mistrial. While the charge is a serious one, we find the record to reveal it as meritless. We give great deference to the district court's decision to grant a mistrial *vel non, United States v. Pierce*, 792 F.2d 740, 742 (8th Cir.1986) (mistrial sought for prosecutorial misconduct during closing argument), particularly in a case such as this where the district court is in the best position to judge the alleged prejudice against the defendant. We agree with the district court that although it was improper for Detective Klier to discuss the case with the defense witnesses, no prejudice resulted against Lewis. The testimony of the defense witnesses subsequent to Klier's intervention does not demonstrate any grounds for mistrial. The district court did not abuse its discretion in denying the motion.

Finally Lewis challenges several evidentiary rulings of the district court. We note the well-known principle that a trial court has great discretion in evidentiary matters and that our review is for abuse. *United States v. Ball*, 868 F.2d 984, 987 (8th Cir. 1989). We find Lewis' claims to be without merit and no abuse of discretion by the district court.

### III. CONCLUSION

Finding no error in the trial record, Lewis' judgment of conviction is affirmed.