991 F.2d 801
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Willie FRANCIS, Appellant,
v.
UNITEd STATES OF AMERICA, Appellee.
 No. 92-2589.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: April 13, 1993.
Filed: April 20, 1993.
 
 Before FAGG, Circuit Judge, PECK,* Senior Circuit Judge, and MAGILL, Circuit Judge.
 PER CURIAM.
 
 
 1
 Willie Francis appeals from the district court's[1] denial of a motion under 28 U.S.C. § 2255 to vacate and set aside his conviction. Francis claims: (1) two venirepersons' equal protection rights were violated by the government's use of discriminatory peremptory challenges; (2) he was discriminated against by being singled out for prosecution in federal court; (3) the identification procedure used in the case was impermissibly suggestive; and (4) he was denied effective assistance of counsel on direct appeal.[2] We affirm.
 
 
 2
 The full facts leading up to Francis' conviction of criminal charges relating to conspiracy and distribution of crack cocaine can be found in United States v. Francis, 916 F.2d 464 (8th Cir. 1990), cert. denied, 111 S. Ct. 2036 (1991). After trial, Francis appealed his conviction and sentence, raising six points of error. This court affirmed both the conviction and sentence. Francis then filed a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. The district court denied that motion, and Francis appeals. Counsel for Francis submitted a brief that incorporates by reference Francis' pro se brief. This opinion addresses and disposes of all claims in both briefs.
 
 
 3
 Francis first claims the district court failed to address his argument that two venirepersons' equal protection rights were violated by the government's use of discriminatory peremptory challenges. We note the district court did address this claim, stating that Batson v. Kentucky, 476 U.S. 79 (1985), operates to protect the equal protection rights of both the defendant and the venirepersons. The district court found that Francis failed to establish a prima facie case of discrimination by the government.
 
 
 4
 To establish a prima facie case of discrimination against either himself or the venirepersons, Francis must raise an inference of racial motivation in the government's use of peremptory challenges. See United States v. Lewis, 892 F.2d 735, 736 (8th Cir. 1989). Francis has offered nothing to infer a racial motivation other than the fact that the government used peremptory strikes to remove two African-American venirepersons. We note that the government also used peremptory strikes to remove four Caucasians, and three African-Americans eventually were selected for the jury. The district court correctly found that Francis did not meet his burden of raising an inference of racial motivation. See id. at 737 (holding that defendant could not make prima facie case of discrimination by pointing to percentages alone).[3]
 
 
 5
 Second, Francis claims he was discriminated against by being singled out for prosecution in federal court. Francis has not offered any facts to support this claim other than the fact that no federal agents were involved in his investigation or arrest. The district court correctly denied his motion to vacate with respect to this claim.
 
 
 6
 Third, Francis contends the district court erred by finding that the identification procedure used in the case was not impermissibly suggestive. He claims the admission of evidence resulting from this identification procedure was clear error. This claim concerns an identification made by Detective Ransburg of the Kansas City Missouri Police Department.
 
 
 7
 Ransburg first saw a photograph of both Francis and his sister, Tammie, during an investigation by the Drug Enforcement Unit of the Kansas City Missouri Police Department. This investigation started when a Florida police department contacted the Kansas City police to inform them that Francis and Tammie had been stopped in Florida and found with a large amount of cocaine.
 
 
 8
 On February 8, 1989, Ransburg made an undercover crack cocaine buy, and identified Francis during the buy. After Francis and three siblings were arrested approximately a month later, Detective Starbuck, also of the Kansas City Missouri Police Department, had a brief conversation with Ransburg acknowledging the arrest of the Francis family. Starbuck showed Ransburg a photo array containing six pictures, one of which was of Francis, and asked him if he recognized anyone. Ransburg immediately identified Francis as having been involved in the drug buy on February 8. Ransburg also identified Francis at trial.
 
 
 9
 Francis filed a motion to suppress the testimony regarding the identification of his photograph by Ransburg. After an evidentiary hearing, the magistrate judge[4] recommended that the district court enter an order denying Francis' motion. The district court adopted the findings of the magistrate judge and denied Francis' motion.
 
 
 10
 Francis claims Ransburg's identifications of him from the photo array and at trial were not founded on Ransburg's perceptions of Francis during the drug deal. Instead, he claims, Ransburg identified him because Ransburg had seen a photograph of him at the start of the investigation, and the conversation between Starbuck and Ransburg acknowledging the arrest of the Francis family implicitly told Ransburg to select Francis. He supports this claim by noting that Ransburg testified at the suppression hearing that he did not identify the person at the drug deal as being Francis until after Ransburg saw Tammie. He also argues that Ransburg stated the person he saw at the drug deal was wearing his hair in a "Jeri curl" style, and that Francis never wore his hair in that style. Finally, he claims the photo spread should have included photographs of Francis' brothers.
 
 
 11
 We review Francis' claim under a two-prong test: (1) whether the identification procedure was "impermissibly suggestive"; and (2) whether, under the totality of the circumstances, a suggestive procedure created "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968); see United States v. Lewin, 900 F.2d 145, 149 (8th Cir. 1990). Among the circumstances we consider to determine the likelihood of irreparable misidentification are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." Manson v. Brathwaite, 432 U.S. 98, 114 (1977).
 
 
 12
 We first address Francis' argument that the photo array should have included photographs of his brothers. We do not believe that a defendant has a right to have the persons who resemble him most in a photographic lineup. Cf. Salam v. Lockhart, 874 F.2d 525, 529 (8th Cir.) (stating the court could not find law to support the proposition that a previous suspect should have been included in the photo spread), cert. denied, 493 U.S. 898 (1989). Furthermore, the district court found the photographs used in the photo array were all of subjects of the same race, age, and size, and possessed similar features.
 
 
 13
 Without deciding whether any part of the procedure used was impermissibly suggestive, we find that, under the totality of the circumstances, Ransburg's identification of Francis in the photo array and in court was reliable. Ransburg testified in the evidentiary hearing to determine the admissibility of the identification evidence. Based on this testimony, the magistrate judge made the following factual findings: During the drug deal on February 8, 1989, Ransburg viewed Francis for approximately three minutes, and had a uninterrupted frontal view for the entire time. The room was well lit, and Ransburg had no difficulty seeing Francis. During undercover operations, Ransburg always attempts to take particular note of people to enable him to identify them later. As Ransburg was leaving the room in which the drug deal had taken place, he saw Tammie, then recognized Francis. He associated the two faces together from having seen Francis' photograph in police files together with his sister. Ransburg had never seen the photo of Francis used in the photo array on March 9, 1989, and Starbuck's purpose in using a photo Ransburg had not seen was to ensure reliable identification. Starbuck made no sign, gesture or indication as to which photograph Ransburg should choose. Ransburg then identified Francis in the photo lineup. The magistrate judge found that Ransburg had identified Francis on the basis of having personally viewed him during the drug deal. The findings made by the magistrate judge were later adopted by the district court.
 
 
 14
 We review the magistrate judge's findings of fact, which were adopted by the district court, under a clearly erroneous standard. United States v. Risken, 869 F.2d 1098, 1100 (8th Cir. 1989). Francis has made conclusory claims concerning Ransburg's identification being in error, but he has not demonstrated that these findings concerning the reliability of Ransburg's identification are clearly erroneous.
 
 
 15
 We have considered these findings along with other circumstances in this case. Ransburg's identification of Francis in court was strong and compelling, and was subject to a thorough and vigorous cross-examination. Considering the totality of the circumstances, we find the procedure followed when the photo array was displayed to Ransburg would not have caused a likelihood of irreparable misidentification. The district court did not err in denying Francis' motion to vacate on this ground.
 
 
 16
 Finally, Francis claims he was denied effective assistance of counsel on direct appeal in violation of his due process and Sixth Amendment rights. He claims the arguments concerning the suggestive nature of the photo array leading to his conviction provided a basis for appeal of the conviction. He argues his former counsel raised the issue in a motion to suppress, but then failed to raise it on appeal, falling below the standard of reasonably effective assistance. See Strickland v. Washington, 466 U.S. 668, 687 (1984).
 
 
 17
 Francis is raising this issue for the first time on appeal from the district court's denial of his § 2255 motion to vacate. Because he did not raise this claim in the district court, we do not consider it on appeal. See United States v. Romero-Vilca, 850 F.2d 177 (3d Cir. 1988).
 
 
 18
 Accordingly, we affirm the judgment of the district court.
 
 
 
 *
 THE HONORABLE JOHN W. PECK, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The Honorable Howard F. Sachs, Chief Judge, United States District Court for the Western District of Missouri
 
 
 [2]
 Francis did not raise the forum, jury selection, or identification issues on direct appeal. See United States v. Francis, 916 F.2d 464 (8th Cir. 1990). The district court noted that it could have dismissed these issues on procedural grounds, see United States v. Samuelson, 722 F.2d 425, 427 (8th Cir. 1983); Peltier v. United States, 867 F.2d 1125 (8th Cir. 1989), but chose instead to dismiss on the merits
 
 
 [3]
 Because Francis did not establish a prima facie case, the government is not required to provide an explanation for its strikes. See Lewis, 892 F.2d at 737. However, the district court noted that it did offer racially neutral reasons for its challenges. The two African-Americans removed by peremptory strikes had close contact with lawyers, and the government had reason to believe they would have preconceived ideas about law and about the United States Attorney's office
 
 
 [4]
 The Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri