**L.D. MALONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 328–95.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 28, 1996.

Discretionary review from Court of Appeals, 14th Supreme Judicial District.

Brian W. Wice, Houston, for appellant.

Alan Curry, Ass't. Dist. Atty., Houston, Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellant was convicted of possession of cocaine and sentenced to seven years confinement. Tex. Health & Safety Code Ann. § 481.115. The Court of Appeals affirmed. *Malone v. State*, 899 S.W.2d 256 (Tex.App.— Houston [14th Dist.] 1995). We granted review to determine whether the Court of Appeals erred in addressing the issue of whether appellant made a *prima facie* case as a part of his motion under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] We will reverse and remand.

After voir dire, but before the jury was impaneled, appellant lodged a *Batson* objection, contending the State excluded two of four black veniremembers on the basis of race. The State responded that appellant failed to make a *prima facie* showing of racial discrimination and the trial judge overruled appellant's *Batson* motion. After the jury was sworn and dismissed the prosecutor explained why she struck the contested veniremembers.[2] Appellant responded that the explanations were pretextual. The trial judge found the strikes were made for racially neutral reasons and again overruled appellant's *Batson* motion.[3]

On appeal appellant contended "the State waived its right to maintain that no *prima facie* showing of discrimination was made when it chose to give its reasons for striking" the contested veniremembers. *Malone*, 899 S.W.2d at 259. The Court of Appeals disagreed, stating the State provided race-neutral explanations only after appellant's motion was overruled and only "to avoid the time and expense of a remand if [the Court of Appeals] were to decide that a prima facie case of discrimination was made." *Ibid.* The Court of Appeals held appellant failed to make *prima facie* showing of discrimination and did not address the merits of appellant's first and second points of error. *Id.,* 899

---

1. Appellant's ground for review states:

   Whether the Court of Appeals erred in holding that the trial court did not err in overruling the appellant's *Batson* motion because defense counsel failed to make a prima facie case of racial discrimination.

2. The prosecutor explained:

   On the record, Judge, recent opinions for the Court of Criminal Appeals, Your Honor, have indicated a tendency by the appellate court to make a prima facie showing in a *Batson* case to be [easily made]. There have been cases where 50 percent of the strikes of the African American jurors have indicated that a prima facie case has been shown. In these instances, the appellate cases go back to the trial court for hearings for the prosecutor to have an opportunity to put forth their racially neutral reasons if there are any for the exercise of peremptory [challenges]. Therefore we'd ask the Court for an opportunity for Ms. Wayne to state on the record what her reasons are for striking any African American jurors, and then we would obviously ask the Court to make a finding that these were indeed racially neutral reasons....

   Thereafter, the State indicated to the Court that it struck one of the contested veniremembers on the basis of a medical condition and the other contested veniremember because she was young, non-responsive, and inappropriately answered one of the voir dire questions.

3. Specifically, the State, after offering her explanations asked the trial judge to make a finding on the record that the reasons for the peremptory challenges were racially neutral. And the trial judge did so.

S.W.2d at 260. Appellant contends the Court of Appeals erred in addressing the trial judge's decision of whether appellant had made a *prima facie* case. Appellant argues the *prima facie* issue was moot once the prosecutor offered her explanations.

The Supreme Court addressed this issue in *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Hernandez raised a *Batson* objection contending the prosecutor struck two Latino veniremembers on the basis of race. *Id.*, 500 U.S. at 354–56, 111 S.Ct. at 1864. Before the trial judge ruled on Hernandez's objection the prosecutor provided race-neutral explanations for the peremptory strikes. *Ibid.* The Supreme Court held that once the prosecutor has provided race-neutral explanations, the explanations, and *not the prima facie showing*, are to be reviewed by the appellate court:

> ... Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.

*Id.*, 500 U.S. at 359, 111 S.Ct. at 1866.

We have addressed this issue in a number of cases and have consistently held that we, like the Supreme Court, will not review the issue of whether the defendant established a *prima facie* case where the prosecutor has articulated reasons for the contested peremptory strike and the trial judge has ruled on the ultimate question of intentional discrimination. *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Cr.App.1992). *Wheatfall v. State*, 882 S.W.2d 829, 835 (Tex.Cr.App.1994) ("Because the State offered a race-neutral explanation we will not review the trial court's *prima facie* ruling, as it is moot.") (citing *Chambers v. State*, 866 S.W.2d 9, 23 (Tex.Cr.App.1993)). For example, in *Staley v. State*, 887 S.W.2d 885 (Tex.Cr.App.1994), the defendant objected to the State's peremptory challenge alleging it was racially motivated. *Id.*, 887

S.W.2d at 897. The trial judge agreed with the State's contention that a *prima facie* case had not been made, but stated, "I want to hear the reason anyway." *Id.*, 887 S.W.2d at 897, n. 2. The State then provided race-neutral reasons for their peremptory strikes. *Id.*, 887 S.W.2d at 898. A majority of the Court held it "will not review the issue of whether the defendant established a *prima facie* case where the prosecutor has articulated his reasons for the challenged peremptory strike and the trial court has ruled on the ultimate questions of intentional discrimination." *Ibid.* (quoting *Hill, supra.*) (Baird, J. concurring, joined by Miller, Campbell, Overstreet and Maloney, JJ.).

The State provides no new authority on this issue nor has the State provided a reason for us to ignore, distinguish or overrule controlling authority from the United States Supreme Court or this Court.[4] Consequently, we reaffirm those cases and hold that once the State's offers explanations for striking the contested veniremembers, and the trial judge rules on the ultimate question of intentional discrimination, the issue of whether the defendant made a *prima facie* case is moot and, therefore, not subject to appellate review.

The judgment of the Court of Appeals is reversed and this case is remanded to that Court for further proceedings consistent with this opinion.

CLINTON, J., concurs.

CLINTON, Judge, concurring.

I agree with Judge Meyers that the court of appeals erred to conclude appellant did not present a *prima facie* case of *Batson* error in this cause. In my view, however, the trial court has yet to conduct a full-scale, proper *Batson* hearing on the question whether the prosecutor's motives were in fact race neutral. I would therefore remand the cause to the trial court for an out of time *Batson* hearing to determine that issue.

MALONEY, J., concurs in the result.

---

4. The State contends it preserved its objection to appellant's prima facie evidence because: 1) it did not concede that a prima facie case had been made; and, 2) the trial judge did not retract his initial ruling that no prima facie evidence was shown. *State's Brief*, pp. 4–5. These arguments are specifically rejected for the reasons stated in *Staley*, 887 S.W.2d at 897, n. 2, and because the State specifically requested the trial judge to make a finding that the explanations for the contested strikes were racially neutral. *See*, n. 3, *supra*.

MEYERS, Judge, concurring.

It appears to me that the relevant sequence of events in this case was as follows. After jury selection, but before the jury was empanelled or sworn, appellant objected to the exclusion of two black veniremembers upon the ground that they had been struck by the prosecuting attorney on the basis of their race. The trial judge, believing that circumstances surrounding the exclusion of these prospective jurors did not make a prima facie case of deliberate racial discrimination, refused to require an explanation from the prosecutor and overruled appellant's motion. The prosecutor then immediately offered to make such an explanation anyway, but the judge proceeded at once to swear, empanel, and admonish the jury without responding to the prosecutor's request. After the jury was dismissed for the day, the prosecuting attorney then promptly renewed her offer to give an explanation for striking the black veniremembers. Appellant objected to her offer upon the ground that his motion had already been overruled. But the judge decided to allow it and the prosecutor then articulated a different racially neutral explanation for the peremptory exclusion of each black veniremember. Appellant responded by arguing that the State did not engage in any significant questioning of these prospective jurors and that the record disclosed no basis for the proffered explanation. At this point, the trial judge inquired of the parties whether they had "anything else." A short discussion of unrelated matters followed, after which one of the prosecutors asked the judge to find "that he's heard the prosecutors [sic] reasons for the peremptory challenges in question, and that the peremptory challenges were made for racially neutral reasons." Without any further discussion, the trial judge simply announced, "Court so finds."

Our law is clear that, when one party to a criminal prosecution claims that the other has used a peremptory challenge to exclude a prospective juror on the basis of race, he must prove by a preponderance of the evidence that his claim is true in fact before the trial judge is required to grant him any relief. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). If such party is able to raise a reasonable inference of racial discrimination from circumstances of the jury selection process, including the constituency of the jury panel, the number and kind of questions propounded to prospective jurors during the voir dire examination, and the number or pattern of strikes exercised against such prospective jurors, he is entitled to a favorable ruling from the trial judge unless the other party is willing to declare that his strikes were not racially motivated and to reveal on the record his actual reasons for using· peremptory challenges against veniremembers of an identifiable racial group. If the complaining party makes such a prima facie case of racial discrimination and the other party fails to give a racially neutral explanation for his strikes or admits that his strikes were racially motivated, then the complaining party is entitled to relief. On the other hand, if the party whose motives are in question does offer an explanation for each of his peremptory strikes which is racially neutral on its face, the judge must then proceed to try the issue of racial motivation just as he would any other issue of fact. He must consider the evidence proffered by the moving party to make his prima facie case, the racially neutral explanations of the other party, any relevant portions of the voir dire examination conducted in his presence or to which his attention is called, and all other evidence offered by the parties in support of their respective positions. If, and only if, the trial judge as factfinder concludes by a preponderance of the evidence that the party whose motives are in question actually did strike prospective jurors because of their race, he must sustain the complaining party's motion. Otherwise, he must overrule it.

Although we are habituated to think of this procedure as peculiar to the litigation of racial discrimination issues in jury selection, it is largely consistent with the way all issues of fact are typically tried under our system of justice. As a general proposition, any movant has the burden to establish his allegations by a standard of proof prescribed by law, usually a preponderance of the evidence. A movant can avoid summary judgment in favor of his opponent only when he produces evidence in support of his allegations suffi-

cient for a rational belief that such allegations are true under the appropriate standard of proof. This is what the law means by a prima facie case. When a prima facie case has been made, and there is no evidence to contradict it or reason to doubt its reliability, judgment should be rendered for the movant. If, however, the opposing party does offer proof controverting it or impugning the reliability of evidence upon which it is based, an issue of fact is joined and should be submitted to the trier of fact for resolution.

A hearing to determine the factual issue whether a party exercised peremptory challenges in a racially discriminatory way, like any other evidentiary hearing, should be conducted according to these general methods. The only significant difference is that the testimony of an attorney whose motives are in question is not available to the moving party at the time he makes his prima facie case because the system of peremptory challenges prescribed by our law entitles each litigant not to disclose the basis of his strikes. Since this rule is not itself unconstitutional, the United States Supreme Court has accepted that litigants have something like a privilege not to reveal the reasons for their peremptory challenges. But the Court has effectively qualified this privilege by holding that it fails when the evidence establishes a prima facie case that the strikes were racially motivated. Accordingly, if the moving party is able to make a prima facie case of racial discrimination without the privileged testimony, the party who made the allegedly discriminatory strikes may wish to waive his privilege and reveal the reason for his challenges because, if he does not, the moving party will necessarily be entitled to ruling in his favor.

When the trial judge first overruled appellant's motion in the instant cause, holding that no prima facie case of racial discrimination against the prosecuting attorney had been made, he therefore effectively rendered a summary judgment on that issue in favor of the State. Such ruling essentially meant that the trial judge thought appellant had not met his threshold burden of proof and that he should, therefore, lose even if the prosecu-

tor produced no evidence on the question whatsoever.

But the prosecuting attorney evidently did not agree. Her subsequent offer to disclose racially neutral reasons for her peremptory challenges in spite of the trial judge's ruling in her favor was, in plain effect, a request to reopen the evidentiary hearing on appellant's motion. She wanted the judge to make a ruling on the ultimate issue of racial motivation after considering her own explanations, thereby foreclosing appellate reversal of an anticipated conviction for what the prosecutor herself evidently believed to be an erroneous ruling by the trial judge concerning appellant's prima facie case. As her cocounsel stated on the record, this Court has reversed such rulings under circumstances nearly identical to those of this case. *See Linscomb v. State*, 829 S.W.2d 164 (Tex. Crim.App.1992). He therefore thought it prudent for her to volunteer racially neutral reasons for her strikes so that, "if the appellate court finds that indeed a prima facie case was made, instead of remanding the case to the Court, 18 months from now, they will be able to examine it on the record and would avoid the undertaking of another hearing."

Certainly, this was a plausible strategy, and one which trial lawyers may be well-advised to adopt if they have no compelling need to withhold the actual motives for their peremptory challenges. But, as we have seen, the declaration of a racially neutral explanation does not end the matter. It only avoids summary judgment in favor of the moving party. Once such an explanation has been given, the court must still proceed to try the factual issue of racial motivation, hearing any further evidence or argument offered by either party and deciding whether the moving party has proven racial motivation by a preponderance of the evidence. Only if the trial court actually did so in this case could the prosecution achieve its stated purpose and avoid "the undertaking of another hearing" regardless of the appellate court's ultimate decision.

But that is where interpreting the record of trial in this case becomes a little more difficult. At first the prosecutor only asked the trial judge to hear her explanations and

find that they "were indeed neutral." On its face, this does not amount to a request that the trial judge find her explanations to be true. The difference is critical, not merely a matter of semantics. Under the law, a racially neutral explanation, whether it is true or not, necessarily avoids summary judgment in favor of the movant. That is a significant result if the movant has made a prima facie case of racial discrimination and is, therefore, entitled to have his motion granted in the absence of a racially neutral explanation. But it does not mean that the party whose motives are in question automatically wins. The trial judge must still decide whether the racially neutral explanation is true in fact. Accordingly, if the prosecutor in this case was just asking the trial judge to find that her explanations were racially neutral, and if that is all the trial judge did, then he did not do all that the law requires because he did not decide whether the prosecutor was racially motivated in fact. Under such circumstances, it might therefore become necessary in the event of a conviction and appeal, to remand the cause for further evidentiary hearing or for factfindings of the trial judge, just the sort of eventuality sought to be avoided by the prosecutor when she volunteered an explanation for her peremptory challenges.

On the other hand, if the prosecutor's request in this case was really for a finding that she did not in fact strike any black veniremembers on account of their race, the consequence would be quite different. A ruling from the trial judge on such a request would be tantamount to a finding of fact on the merits and would, therefore, effectively end his role in the dispute. Even if he committed errors in coming to such a decision, there would be no circumstances under which an ensuing appeal might have to be abated and remanded to him for further proceedings connected with appellant's motion. At worst, from the State's perspective, appellant's conviction might ultimately be reversed and the cause remanded for a new trial on account of errors in the jury selection process. But at least the State's main objective, to avoid a later abatement of the appeal and a remand for further evidentiary hearing, would be accomplished.

In spite of some ambiguity implicit in the prosecutor's initial request, this latter hypothesis is, in my opinion, best supported by the record. It seems clear to me that the prosecuting attorney actually wanted the trial judge to make a factfinding on the ultimate question of racial motivation, taking into account all of the evidence in the record relevant to that question, including the evidence relied upon by appellant to make a prima facie case and the evidence of racially neutral explanations offered by the prosecutor. It is not just that no other kind of ruling would have been sufficient to accomplish the prosecutor's purpose. After her explanations were concluded and the trial judge made it clear that he would receive further evidence on the issue from either party, and after the trial judge heard argument from appellant concerning the credibility of her racially neutral explanations, the prosecuting attorney expressly asked the trial judge to find that her "peremptory challenges were made for racially neutral reasons," and he immediately did so. These circumstances convince me that the trial judge actually ruled, not just on the racial neutrality of the prosecutor's explanations, but on whether he, as the factfinder, believed from a preponderance of the evidence that those explanations were true. The plain effect of his ruling is that he did.

Thus it is clear that the prosecuting attorney was not just trying to spread her explanations on the record for technical reasons. She was litigating the issue of her motivation for striking two black veniremembers because she knew, based on this Court's precedents, that she would have to litigate that issue anyway on remand if the defendant were permitted to appeal the trial judge's erroneous ruling on his prima facie case. Accordingly, she not only put her explanations on the record; she also twice demanded and eventually got a favorable ruling from the trial judge. And her strategy worked. Appellant's points of error on appeal did not include a complaint about the trial judge's ruling on his prima facie case. It included only a complaint about his ultimate ruling on the merits.

Unfortunately, the Fourteenth Court of Appeals preferred to review the issue of appellant's prima facie case instead. In addition to the fact that this issue was not raised on appeal at all and should not therefore have been considered, the court managed to get it wrong as well. Under our precedents, a prima facie case of racial discrimination can be established by an analysis of the number or pattern of peremptory challenges alone. So long as the proportion of strikes exercised against those of an identifiable race actually suggests, as an empirical matter, that the party exercising those strikes was motivated by considerations of race, the law requires that he be made to explain his actual motives on request of the opposing party. In the instant cause, it seems clear to me that the proportion of strikes exercised against black veniremembers by the State was sufficiently suspicious to require such an explanation. Accordingly, I agree that the lower appellate court erred to hold otherwise.

The plain effect of all this is that the Fourteenth Court of Appeals has not yet ruled on the point of error actually presented by appellant in his brief, which is whether "the trial court erred in permitting the prosecution to peremptorily challenge two black veniremembers." Appellant's arguments under this point of error make it clear that he wanted the appellate court to hold that the evidence of racial motivation greatly outweighed the racially neutral explanations of the prosecutor. In my opinion, the Court of Appeals was obliged to reach and dispose of this issue according to the methods discussed above. Because, therefore, this Court remands to the Fourteenth Court of Appeals for further such consideration, I concur in its judgment.

MANSFIELD, Judge, dissenting.

Appellant, L.D. Malone, was indicted for felony possession of crack cocaine in an amount less than 28 grams. The indictment contained one enhancement paragraph alleging appellant was convicted of the felony of burglary of a building in 1990. Appellant pled not guilty to the present offense but pled true to the enhancement paragraph. The jury found appellant guilty as charged in the indictment and the trial court found true the allegations in the enhancement paragraph. Appellant was sentenced to seven years confinement in the Texas Department of Criminal Justice—Institutional Division. The court of appeals affirmed. *Malone v. State*, 899 S.W.2d 256 (Tex.App.—Houston [14th] 1995).

This Court granted review to determine if the court of appeals erred in holding that the trial court did not err in overruling appellant's motion under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) because appellant failed to make a prima facie case of purposeful racial discrimination by the State in its exercise of its peremptory challenges. Because I believe the court of appeals decision is correct, I respectfully dissent.

After the State and appellant had exercised their peremptory challenges, appellant made a *Batson* motion, claiming the State struck two black venirepersons.[1] The following exchange took place:

Appellant: I beg your pardon, No. 4 and No. 23.

Court: What says the State?

Prosecutor: That in fact those two jurors, as far as I can tell, are Black and that they were struck by the State.

Court: And what?

Prosecutor: These are two jurors that are Black and they were struck by the State. There has been no showing or prima facie case that the State has exercised [sic] those jurors in a manner that is not race neutral. And are you requiring me to come forward with some race neutral reasons?

Appellant: I would point out that of the four that were Black, 50% of those were struck by the State. I don't recall any basis of an intelligent strike, except their race.

---

1. The record indicates venirepersons 4; 10, 23, 26, 29, 32, and 40 were Black. Number 40 was not reached; numbers 26 and 29 were struck for cause. Out of the four remaining, the State exercised peremptories with respect to numbers 4 and 23. Numbers 10 and 32 actually served on the jury.

Court: Black Jurors 10 and 32 are on the jury, is that right?

Prosecutor: Yes.

Court: Anything further?

Prosecutor: Nothing from the State.

Court: Okay, overruled.

Subsequently, after the jury was sworn, appellant entered his plea of not guilty to the indictment, and after the jury panel was sent home for the day, the State asked the Court for an opportunity to put on the record the racially neutral reasons for its peremptory strikes. The State expressed its concern that if an appellate court later found appellant had made a prima facie case of purposeful racial discrimination, the necessity of remanding the case back for another hearing could be avoided by permitting the State to put its racially neutral reasons on the record. The trial court granted the State's request, and appellant was provided an opportunity to contest the State's racially neutral explanation for its peremptory strikes of the two black veniremembers.

The Fourteenth Amendment to the United States Constitution prohibits the State from exercising its peremptory strikes in a racially or sexually discriminatory manner. *J.E.B. v. Alabama*, —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Esteves v. State*, 849 S.W.2d 822 (Tex.Crim. App.1993). Texas Code of Criminal Procedure Article 35.261 also prohibits the State from using race as the basis for exercising its peremptory strikes.

In order to be entitled to a *Batson* hearing, the defendant must establish a prima facie case of purposeful discrimination on the part of the State. *Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23; *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). "In this context, a prima facie showing is that minimum quantity of evidence necessary to support a rational inference that the allegation of purposeful discrimination is true." *Harris v. State*, 827

S.W.2d at 955 n. 4. This is just that amount of evidence with "the power to incline toward a belief." *Linscomb v. State*, 829 S.W.2d 164, 166 (Tex.Crim.App.1992).

If the defendant makes a prima facie showing, the burden shifts to the State to provide race- or sex-neutral explanations for its peremptory challenges with respect to the venirepersons at issue. *Cook v. State*, 858 S.W.2d 467 (Tex.Crim.App.1993). Subsequently, the burden shifts back to the defendant to refute the State's neutral explanations or, alternatively, to show they are merely a pretext for discrimination. *Salazar v. State*, 795 S.W.2d 187 (Tex.Crim.App. 1990).[2] If the trial court determines the State used its peremptory strikes in a racially discriminatory manner, Texas Code of Criminal Procedure Article 35.261 requires that the court dismiss the entire jury panel and call a new array.

A trial court's ruling on a *Batson* motion will not be overturned on appeal unless clearly erroneous. In conducting its review of said ruling, the appellate court must review the entire record to determine if the trial court erred. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Whitsey v. State*, 796 S.W.2d 707, 723 (Tex.Crim.App.1989) (opinion on rehearing); *Young v. State*, 826 S.W.2d 141 (Tex.Crim. App.1991); *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.1991).

In the present case, after the trial court had already denied appellant's *Batson* motion, the State indicated for the record its reasons for striking the two black venirepersons: one was struck on the basis of a medical condition, and the other was struck due to her youth, her nonresponsiveness, and her inappropriate answer to one of the questions asked during voir dire. Appellant responded by claiming the State's explanations were pretextual, but offered no evidence to support its claim. The trial court found the State's strikes were made for racially neutral reasons and again overruled appellant's *Batson* motion.

---

**2.** See also *Purkett v. Elem*, —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *U.S. v. David*, 844 F.2d 767, 769 (11th Cir.1988).

As the court of appeals noted in its opinion, this case is unusual procedurally, because the State offered its racially neutral explanations *after* the trial court initially denied appellant's *Batson* motion. The State's intent was merely to put its racially neutral explanations on the record to avoid the expense of a remand if the court of appeals or this Court found the trial court erred in ruling appellant did not establish a prima facie case. Appellant does not cite any persuasive authority that the trial court abused its discretion in allowing the State to put on the record its racially neutral explanations in the manner it did, or that, by not giving its racially neutral explanations at the time appellant initially made his *Batson* motion, the State waived its right to offer them later during the trial. Furthermore, appellant fails to show he was harmed in any way as he was permitted to contest the State's racially neutral reasons as pretextual, and, in effect, obtained a second ruling on his *Batson* motion. While the procedure followed in the present case is irregular, we discern no harm and hold that the State did not waive its right to offer its racially neutral explanations by offering them after the trial court's initial ruling on appellant's *Batson* motion.[3]

We now turn to the issue of whether the trial court's initial ruling that appellant failed to make a prima facie case of racial discrimination was clearly erroneous. Appellant's evidence in support of his *Batson* motion was solely statistical, i.e., the fact that the State used two of its peremptory challenges to strike 50% of the eligible black venirepersons.[4]

The mere striking of a black venireperson, in and of itself, does not make a prima facie case of purposeful discrimination. A defendant must come forward with facts, not mere numbers alone. See *Thompson v. United States,* 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *United States v. Branch,* 989 F.2d 752, 755 (5th Cir.1993); *United States v. Davis,* 40 F.3d 1069 (10th Cir.1994); *United States v. Canoy,* 38 F.3d 893 (7th Cir.1994). In *United States v. Lewis,* 892 F.2d 735, 736 (8th Cir.1989), the court held that "reliance on percentages alone does not make out a prima facie case." In *Lewis,* the prosecutor used a peremptory challenge to strike one of the two black venirepersons on the panel, i.e., 50% of the black venirepersons.

Numbers, in and of themselves, may constitute a prima facie case where the State has used its peremptory challenges to strike all or almost all minority venirepersons on the panel. In *Whitsey, supra,* we found a prima facie case was made where the State struck all six eligible black venirepersons. We reached a similar result in *Chambers v. State,* 784 S.W.2d 29, 30 (Tex.Crim.App.1989) (State struck all three eligible black venirepersons) and *Salazar v. State, supra* (State struck the only minority venireperson). Several other courts have also held a prima facie case is made where the State uses its peremptory challenges to strike all eligible black venirepersons. *United States v. Horsley,* 864 F.2d 1543 (11th Cir.1989); *United States v. Clemons,* 843 F.2d 741 (3rd Cir.1988); *Brown v. State,* 762 P.2d 959 (Okl.Crim.App. 1988).

As the State, in the present case, used its peremptory challenges to strike only 50% of the eligible black venirepersons, appellant's argument that this statistic alone constitutes a prima facie case is not as compelling as it would be had the State struck all or almost all of the eligible minority veniremembers. Factors that may give rise to a prima facie

---

**3.** I agree with the implication of the majority that, in effect, the trial court conducted a second *Batson* hearing when it allowed the State to place its racially neutral explanations on the record, permitted appellant an opportunity to rebut the State's racially neutral explanations and then, for a second time, overruled appellant's *Batson* motion. Had the trial court found the State's explanations to be unpersuasive (e.g. pretextual) it would have had to rule in favor of appellant's *Batson* motion and a new jury would have had to have been selected.

**4.** The record shows the State used 20% of its peremptory challenges (two) to strike 50% (2 out of 4) of the eligible black veniremembers, who were 13% of the 32 eligible veniremembers. 80% (eight) of the State's peremptory challenges were used to strike 29% (8 out of 28) of the eligible nonminority venirepersons, who were 87% of the 32 eligible venirepersons.

case in circumstances like those in the present case include:

1) whether peremptory strikes were used to strike minority venirepersons at a rate substantially in excess of that used to strike nonminority venirepersons;

2) whether minority veniremembers were questioned in substantially the same manner as nonminority veniremembers;

3) whether white venirepersons with characteristics similar to those of struck minority venirepersons were *not* struck; and

4) whether the prosecutor's statements during voir dire indicated a bias against minority venirepersons.

*Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23; *Branch*, 989 F.2d at 755; *Lewis*, 892 F.2d at 736; *Keeton v. State*, 749 S.W.2d 861, 867 (Tex.Crim.App.1988); *Linscomb v. State*, 829 S.W.2d at 166.

This Court has used some or all of the factors described above in determining if defendants had made a prima facie case. In *Emerson v. State*, 820 S.W.2d 802, 804 (Tex. Crim.App.1991), we held the defendant had made a prima facie case by showing the State struck four out of six eligible black venirepersons (67%) from the panel, the State asked no questions of one of the struck black venirepersons, asked only perfunctory questions of another, and the State did not strike white venirepersons with characteristics similar to those of the two other black venirepersons who were struck.

In *Rousseau v. State*, 824 S.W.2d 579, 583 (Tex.Crim.App.1992), a capital case, we held appellant made a prima facie case where the State used seven of its thirteen strikes on black and Hispanic venirepersons, and the State was not required by the trial court to give its racially neutral explanations for striking a black female venireperson after appellant made a timely *Batson* motion with respect to that venireperson.

In *Linscomb, supra*, the State exercised four out of its ten peremptory challenges to strike four out of six eligible black venirepersons. The two remaining black venirepersons actually served on the jury. In response to appellant's *Batson* motion, the State chose not to offer any racially neutral explanations for its strikes of the four black venirepersons. This Court held that because the State used 40% of its peremptory strikes to exclude four out of six minority venirepersons, who comprised 19% of the 32 eligible venirepersons, a prima facie case was made. "In the instant cause, the prosecutor exercised peremptory challenges against black veniremembers at more than twice the rate one would expect from a random selection. Because she was not made to reveal her actual motives, we have no reason to suppose that this disproportionately large number was merely coincidental ... In short, given the suspiciously high rate at which she struck black veniremembers, some explanation of her actual motives seems clearly to be called for. And, as a practical matter, that is all 'prima facie case' really means." *Linscomb, supra*, at 167.

*Linscomb* appears to stand for the proposition that *any statistical disparity* in the exercise by the State of its peremptory challenges with respect to majority venirepersons may constitute a prima facie case of purposeful discrimination in violation of *Batson*.[5] While the validity of that proposition is open to question,[6] we are not now confronted with that issue. Today we need decide only whether the trial court could have reasonably concluded that appellant had not made a prima facie case of intentional discrimination by the State in violation of *Batson* and Article 35.261 when the only evidence offered by appellant in support of his *Batson* motion was statistical. We hold that he could have. A reasonable trial judge

---

**5.** Left unanswered in *Linscomb* is whether *any* statistical disparity—no matter how slight—in the exercise by the State of its peremptory challenges with respect to minority venirepersons vis-a-vis nonminority venirepersons may constitute a prima facie case of purposeful discrimination, absent any racially neutral explanation offered by the State.

**6.** See *United States v. Branch*, 989 F.2d 752 (5th Cir.1993); *United States v. Lewis*, 892 F.2d 735 (8th Cir.1989); *United States v. Davis*, 40 F.3d 1069 (10th Cir.1994).

could conclude that the mere fact that the State peremptorily struck two out of four eligible black veniremembers, in and of itself, did not raise a rational inference of intentional discrimination.

Having reviewed the record in its entirety, I agree with the court of appeals finding there was no abuse of discretion by the trial court with respect to its ruling on appellant's *Batson* motion.

I respectfully dissent.

KELLER, Judge, dissenting.

I join Judge Mansfield's dissenting opinion except for the following remarks:

I write separately to discuss whether the State waived its objection that appellant failed to meet his prima facie case by offering and litigating the validity of race-neutral reasons after the trial court had ruled in the State's favor concerning the lack of a prima facie showing. While Judge Mansfield characterizes this procedure as "irregular," I believe that this procedure was a perfectly sensible method of developing the record to further judicial economy and to avoid the potential expense of a remand if the Court of Appeals, or this Court, later decided that a prima facie case had been established. I believe that the State should always be permitted to develop such a record without forfeiting its right to challenge appellant's prima facie showing on appeal.

If the trial court rules that a prima facie case has not been established, and on appeal that ruling is determined to be erroneous, the State will be permitted to attempt to articulate race-neutral explanations for its strikes at a hearing on remand. *See Emerson v. State*, 820 S.W.2d 802, 805 (Tex.Crim. App.1991). The only question here is whether that articulation will occur sooner or later; therefore, it seems irrational that these two situations would be treated differently. Moreover, if making the articulation occur "sooner" (at trial) results in waiving an objection to the defendant's prima facie case, the State will have every incentive to wait until "later" (on remand), in the hope that its objection to the prima facie case will succeed. Delaying the race-neutral explanations until

remand results not only in greater time and expense but also in the risk that the proceedings will be less accurate due to the fading memories of its participants.

In *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the Supreme Court analogized to Title VII cases under the Civil Rights Act of 1964 and stated that the prima facie case is no longer relevant "where the defendant has done everything that would be required of him" if a prima facie case had been established. *Id.*, 500 U.S. at 359, 111 S.Ct. at 1866, 114 L.Ed.2d at 405. But the Court also pointed out that the "trial court had no occasion to rule" whether or not a prima facie showing had been made in that case. *Id.* These two statements highlight two possible approaches to addressing the validity of the prima facie case on appeal:

(1) to treat the issue as moot if the trial court rules upon the ultimate question of intentional discrimination regardless of whether or not the State obtained a ruling concerning the existence of a prima facie case, or

(2) to treat the issue as moot only if the trial court rules upon the ultimate question of intentional discrimination *and* the State has failed to obtain a ruling (or object to the trial court's failure to rule) concerning the existence of a prima facie case.

Both approaches are found in the caselaw of this state. In one decision, we held the issue of the establishment of a prima facie case to be moot where the State "fail[ed] at trial to object to the trial court's failure to rule on the defendant's prima facie case." *Chambers v. State*, 866 S.W.2d 9, 23 (Tex. Crim.App.1993). In that situation, the trial judge's ruling denying the *Batson* claim was presumed to cover the ultimate question of intentional discrimination. Because the trial court avoided ruling upon the prima facie case, we declined to address it on appeal. *Id.*

By contrast, we have also held moot the issue of whether a prima facie case was established, even though the trial court apparently ruled upon the issue, where the State subsequently offered race-neutral ex-

planations. *Staley v. State,* 887 S.W.2d 885, 897–898 (Tex.Crim.App.1994). *Wheatfall v. State,* 882 S.W.2d 829, 835 (Tex.Crim.App. 1994). Other cases have used rather expansive language for fact situations that conform to the narrower language found in *Chambers. Hill v. State,* 827 S.W.2d 860, 862 (Tex.Crim. App.1992) (trial court did not overrule appellant's objection until after the State offered race-neutral reasons). *Dewberry v. State,* 776 S.W.2d 589, 591–592 n. 2 (Tex.Crim.App. 1989) (we addressed the prima facie case because trial court's finding of no prima facie case stopped the fact finding process).

I would point out that *Hernandez* does not establish substantive constitutional law but merely sets forth a procedural rule for appellate review purposes that the Supreme Court, for policy reasons, has decided to adopt. State procedural rules for implementing remedies for constitutional violations may differ from those formulated in the federal system. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (state procedural rules concerning the litigation of federal constitutional rights may constitute adequate state law grounds on both certiorari and federal habeas corpus).

To the extent that *Hernandez*'s analogy to Title VII civil cases may manifest a policy of disregarding the question of whether a prima facie case has been established whenever the State also offers its race-neutral reasons, I do not find that analogy to be convincing. Unlike federal civil cases, where a Title VII claim stands on its own as an action for money damages, a *Batson* claim is merely an objection made in the context of jury selection for a trial. Viewing the *Batson* claim as a trial objection, it makes sense to require the State to obtain a ruling concerning the prima facie case in order to advance the contention on appeal. Without a ruling, the prima facie case is not an issue that can be evaluated clearly on appeal, and the case is more properly addressed on the merits of the ultimate issue of intentional discrimination. On the other hand, an explicit ruling on the prima facie case draws the issue into sharp focus, encouraging the parties to develop the issue fully so that appellate review does not

become "bogged down" as a result. *See Dewberry,* 776 S.W.2d at 591 n. 2.

Moreover, the reversal of an erroneous ruling on the prima facie case is different in effect for a *Batson* claim than for a Title VII civil claim. A reversal on a Title VII claim affects only the Title VII claim; if other claims do exist, they would be unaffected by a trial court's ruling on the prima facie case for the Title VII claim. Not surprisingly, the Title VII case cited by *Hernandez* notes that the mootness issue is raised only when the civil defendant, who opposes the Title VII claim, *loses. United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). Once a trial judge rules in favor of the civil defendant that there was no prima facie showing, there will be no further trial proceedings relating to the Title VII claim.

On the other hand, reversal on a *Batson* claim affects the entire trial of the case. If the trial court rules that the criminal defendant has not made his prima facie case, and nothing more is offered with regard to the *Batson* claim, the trial of the criminal defendant will proceed. If the *Batson* claim is later found to have merit, the conviction will be reversed in its entirety. In other words, a favorable ruling on a Title VII claim *halts the fact-finding process on all proceedings that could be reversed as a result of an erroneous ruling on the claim,* but a favorable ruling on a *Batson* claim *does not* halt the fact-finding process on all proceedings that could be reversed as a result of the *Batson* issue because the criminal defendant's trial continues to proceed. Unlike Title VII litigation, in the *Batson* context the prosecutor is faced with the possibility that the reversal of a favorable ruling could undo proceedings that had not yet occurred at the time the ruling was obtained. This unique position requires that the prosecutor be given the opportunity to preserve the record without being penalized on appeal for doing so.

I would hold that the State did not sacrifice the favorable ruling on the prima facie case by litigating the merits of the *Batson* claim in order to preserve the record. To the extent that *Staley* and *Wheatfall* have

held to the contrary, they should be overruled, and we should disavow the broader language found in other opinions.

I respectfully dissent.

McCORMICK, P.J., and WHITE, J., join.